DAVID YEREMIAN & ASSOCIATES, INC.
David Yeremian (SBN 226337)
david@yeremianlaw.com
Alvin B. Lindsay (SBN 220236)
alvin@yeremianlaw.com
535 N. Brand Blvd., Suite 705
Glendale, California 91203
Telephone: (818) 230-8380
Facsimile: (818) 230-0308

DAVTYAN PROFESSIONAL LAW CORPORATION
Emil Davtyan (SBN 299363)
support@davtyanlaw.com
5959 Topanga Canyon Blvd, Suite 130
Woodland Hills, California 91367
Telephone: (818) 875-2008
Facsimile: (818) 722-3974

Attorneys for Plaintiff LUCIO SANCHEZ and others similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| LUCIO SANCHEZ, an individual, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AM RETAIL GROUP, INC., a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:18-cv-00287-JCS<br><br>CLASS ACTION<br><br>Assigned For All Purposes To:<br>Hon. Joseph C. Spero, Courtroom G, 15th Floor<br><br>**NOTICE OF MOTION AND UNOPPOSED SECOND RENEWED MOTION FOR PRELIMINARY APPROVAL OF JOINT STIPULATION OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS, APPROVAL OF CLASS NOTICES, AND SETTING FINAL APPROVAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Declarations of David Yeremian, Alvin B. Lindsay, and Emil Davtyan; and [Proposed] Order*]<br><br>Date:        October 4, 2019<br>Time:        9:30 a.m.<br>Location:  Courtroom G, 15th Floor<br><br>Original Complaint filed: December 15, 2017<br>First Amended Complaint: January 31, 2018<br>Second Amended Complaint:  April 30, 2018<br>Date of Removal: January 12, 2018 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on **October 4, 2019**, at **9:30 a.m.** or as soon thereafter as counsel may be heard, in Courtroom G of this Court, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California 94102, before the Honorable Joseph C. Spero, Plaintiff LUCIO SANCHEZ ("Plaintiff"), on behalf of himself and the putative Settlement Class of similarly situated employees of Defendant AM RETAIL GROUP, INC. ("Defendant"), will and hereby does renew his motion asking this Court for preliminary approval of the parties' Second Amended Joint Stipulation of Settlement of Class and Collective Claims ("Settlement" or "Settlement Agreement"), which proposes a fair and reasonable resolution of all of Plaintiff's class, collective, and representative claims against Defendant in this action. At the hearing on Plaintiff's original motion for preliminary approval (ECF # 44) on **April 26, 2019**, the Court required revisions to the Settlement documents and granted Plaintiff leave to file a Renewed Motion for Preliminary Approval within 30 days of the hearing. (ECF # 45). To that end, the Parties entered into the Amended Joint Stipulation of Settlement of Class and Collective Action Claims (ECF # 47-2) addressing the Court's required revisions, with an proposed Amended Class and Collective Notice, and filed a renewed motion for its preliminary approval on **May 24, 2019**. (ECF # 47). At the hearing on the first renewed motion for preliminary approval on **June 28, 2019**, the Court denied the motion without prejudice (ECF # 49) and granted Plaintiff leave to file a second renewed motion for preliminary approval with amended Settlement, Notice and other documents addressing the various changes and additions the Court required. The parties then entered into the Second Amended Joint Stipulation of Settlement of Class and Collective Action Claims now before the Court for preliminary approval, and agreed to the form and content of the proposed California Class Notice and FLSA Collective Notice at Exhibits A and B to the Settlement.

Plaintiff respectfully requests entry of an order (1) conditionally certifying the California Class comprised of the California Settlement Class Members for settlement purposes under the Federal Rules of Civil Procedure, Rule 23 (e.g., "Rule 23"), and conditionally certifying a collective of the FLSA Settlement Collective Members for settlement purposes under 29 U.S.C. §201., *et seq.*; (2) preliminarily approving the parties' Settlement; (3) appointing Plaintiff as the

Class Representative and Plaintiff's counsel as Class Counsel; (4) approving the form of the parties' proposed Notices; and (5) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiff for their requested attorneys' fees, costs, and service award.

Plaintiff respectfully submits good cause exists for granting the Motion for the reasons set forth in the concurrently filed documents, and also in the original filed approval documents at ECF # 44 to 44-5 and the amended Settlement and approval document in the first renewed motion for preliminary approval. (ECF # 47 to 47-5). Defendant's counsel has reviewed the documents being filed in support of this renewed Motion and does not oppose it, though Defendant has reserved the right to submit a Notice of Non-Opposition, together with additional points and authorities for the Court's consideration.

The basis for this Motion is that the proposed Settlement is fair, adequate, and reasonable and in the best interests of the Class and Collective members as a whole, and the procedures proposed by the parties are adequate to ensure the opportunity of Class and Collective members to participate in, opt out of, or object to the Settlement.

This Motion is based upon this Notice of Motion and Second Renewed Motion for Preliminary Approval and the supporting Memorandum of Points and Authorities and other documents filed herewith, including the Second Amended Settlement Agreement, the Declarations of Class counsel and any of their exhibits, the [Proposed] Order granting preliminary approval as addressed above, and the other pleadings and records on file in this action, including the original and first amended motion documents (ECF Nos. 44 and 47), and the presentations of counsel and such oral or documentary evidence as may be presented at the hearing on this unopposed Motion.

DATED:  August 30, 2019                    DAVID YEREMIAN & ASSOCIATES, INC.


                                           By /S/ David Yeremian
                                               David Yeremian
                                               Alvin B. Lindsay
                                               Attorneys for Plaintiff LUCIO SANCHEZ
                                               and all others similarly situated

SECOND RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS & COLLECTIVE SETTLEMENT

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    PROCEDURAL HISTORY OF THE CASE ...................................................... 2

    A.   The Proceedings, Pleadings, and Parties ................................................... 2

    B.   Summary of Discovery Conducted Prior to Mediation ............................. 4

    C.   Mediation and Defendant's Estimated Liability Exposure ....................... 5

        1.   Liability Exposure for California Unpaid Wages Claims ................. 6

        2.   Liability Exposure for California Meal Period Violations ............... 7

        3.   Liability Exposure for Rest Period Claims ...................................... 7

        4.   Liability Exposure for California Expense Reimbursement .............. 8

        5.   Liability Exposure for Other California Claims, Summary .............. 8

        6.   The FLSA Collective Claims ........................................................... 8

        7.   Total Potential Liability and Percentage of Recovery ..................... 10

III.   SETTLEMENT TERMS .................................................................................... 10

    A.   Value of the Settlement to the Class ......................................................... 10

    B.   Size of the Classes and the Class Definitions .......................................... 10

    C.   Nature of the Payments and Notice, Exclusion, Objection Periods ......... 11

    D.   The Released Claims and Released Parties ............................................... 11

    E.   Attorney's Fees, Costs, Enhancement, Administration, PAGA ................ 12

    F.   The Net Distribution Funds; Calculations and Payments to Classes ....... 12

    G.   Notice Procedures ..................................................................................... 13

    H.   Tax Allocations, the Reserve Fund, Uncashed Checks, and *Cy Pres* ...... 14

IV.    ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL ...................... 15

    A.   Standard of Review for Class Action Settlements .................................... 15

        1.   Strength of Plaintiff's Case, Mediation Supports Approval ............ 16

        2.   The Risk, Expense, Complexity, Likely Duration of Litigation ..... 17

        3.   The Risk of Maintaining Class Action Status Through Trial .......... 17

        4.   The Amount Offered In Settlement Is Fair and Reasonable ............ 18

i

5.    The Extent of the Discovery Completed, Stage of Proceedings....................................... 19

6.    The Experience and Views of Counsel........................................................................... 20

7.    The Presence of a Governmental Participant................................................................. 20

V.    THE CLASSES SHOULD BE CONDITIONALLY CERTIFIED ....................................... 20

A.    The Settlement Classes Satisfy the Requirements of Rule 23 ......................................... 20

1.    The Numerosity Requirement is Satisfied....................................................................... 20

2.    Common Questions of Law and Fact Exist ..................................................................... 21

3.    Claims of the Plaintiff Are Typical ................................................................................. 21

4.    Plaintiff and Class Counsel Are Adequate ...................................................................... 22

B.    The Prerequisites of Rule 23(b) Are Also Satisfied........................................................ 22

1.    The Predominance Requirement ..................................................................................... 22

2.    The Superiority Requirement .......................................................................................... 23

VI.    REQUESTED APPROVAL AND FEES, COSTS, ENHANCEMENT............................... 23

A.    The Requested Fees and Costs are Appropriate, and Class Counsel Will Submit
Detailed Support for Them Prior to Final Approval ................................................................ 23

B.    The Class Representative Enhancement Is Reasonable ..................................................... 24

C.    The Administrator and Administration Costs Should Be Approved.................................. 25

VII.    THE PROPOSED METHOD OF NOTICE IS APPROPRIATE ....................................... 25

VIII.    CONCLUSION ................................................................................................................ 25

MEMORANDUM SECOND RENEWED PRELIMINARY APPROVAL CLASS, COLLECTIVE SETTLEMENT

## **TABLE OF AUTHORITIES**

**Cases**

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ............................................................ 19

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ................................ 25

*Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268 (9th Cir. 1992)................................................ 19

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ......................................... 15, 16, 19, 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..............................................16, 20-21

*Hesse v. Sprint Corp.,* 598 F.3d 581 (9th Cir. 2010) ...................................................................... 11

*In re High–Tech Emp. Antitrust Litig.,* Case No. 1–CV–02509–LHK, 2014 WL 3917126

  (N.D. Cal. Aug. 8, 2014) .......................................................................................................... 16

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988).............................................................. 20

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................................................. 19

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ....................... 19

*Ruch v. AM Retail Group, Inc.*, ND Cal. Case No. 14-CV-05352-MEJ ................................... 10, 17

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) .................................................. 23

*Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943 (9th Cir. 1976)..................................................... 19

*Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150 (9th Cir. 2016) ..................................... 23

**Statutes**

29 U.S.C. § 201 *et seq.* (FLSA) .............................................................................................. passim

29 U.S.C. §§ 206 and 207 .......................................................................................................... 3, 9

29 U.S.C. § 216(b) ......................................................................................................................... 9

Business & Professions Code § 17200 *et seq* .................................................................................. 3

Labor Code § 203 ...................................................................................................................... 3, 8

Labor Code § 221 ............................................................................................................................ 3

Labor Code § 226(a) ................................................................................................................... 3, 8

Labor Code § 226.7 ......................................................................................................................... 3

Labor Code § 510 ............................................................................................................................ 3

Labor Code § 2802 .......................................................................................................................... 3

**Other Authorities**

*Newberg on Class Action*, 3d Ed. § 11.51 ...................................................................... 20

**Rules**

Fed. R. Civ. P. 23 (Rule 23) ............................................................................... passim

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 21

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 22-23

Fed. R. Civ. P. 23(c) ................................................................................................ 25

Fed. R. Civ. P. 23(e) ......................................................................................... 15, 22

MEMORANDUM SECOND RENEWED PRELIMINARY APPROVAL CLASS, COLLECTIVE SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff LUCIO SANCHEZ ("Plaintiff"), on behalf of himself and the California Class Members and the FLSA Collective Members, respectfully seeks preliminary approval of the Second Amended Joint Stipulation of Settlement of Class and Collective Action Claims ("Settlement" or "Settlement Agreement") of Plaintiff's class, collective, and representative claims against AM RETAIL GROUP, INC. ("Defendant"). The parties' proposed Settlement Agreement is provided at **Exhibit 1** to the concurrently filed declaration of David Yeremian ("Yeremian Decl.") in support of this renewed Motion. It follows Plaintiff's original motion (ECF # 44), which the Court denied without prejudice at hearing on **April 26, 2019** (ECF # 45), and the initial renewed motion on **May 24, 2019** (ECF # 47), which the Court denied without prejudice on **June 28, 2019**. (ECF # 49). The Court also granted leave to file this Second Renewed Motion addressing its required amendments to the Settlement Agreement and Class Notice. (Yeremian Decl., ¶¶ 2, 17-18).

Plaintiff, without opposition from Defendant (Yeremian Decl., ¶ 10), requests preliminary approval of a non-reversionary Settlement for **$1.3 million**. The "California Class Members" are defined as "individuals employed by Defendant at any time from **October 6, 2015** through **January 31, 2019** and who have been employed by Defendant as nonexempt hourly retail store employees within the state of California," and the "California Settlement Class Members" are all of those who do not opt out. (Yeremian Decl., ¶ 66(a); Yeremian Decl., Exhibit 1, Settlement, ¶¶ 2.2-2.3).  The "FLSA Collective Members" are defined as "all current and former hourly, non-exempt retail store employees who worked for Defendant at any time during the period of **December 15, 2014** through **January 31, 2019** and who worked overtime and received bonuses and/or incentive in the same pay period." The "FLSA Settlement Collective Members" are those who affirmatively opt into this Settlement by cashing the checks for their Individual Collective Action Settlement Payments, which will include language acknowledging they are opting into the FLSA Collective. (Yeremian Decl., ¶ 66(b); Settlement, ¶¶ 2.15-2.17).

Plaintiff requests entry of an Order: (1) conditionally certifying for settlement purposes the California Settlement Class Members under Rule 23 of the Federal Rules of Civil Procedure and the

FLSA Settlement Collective Members under the FLSA, 29 U.S.C. §201., *et seq*.; (2) preliminarily approving the parties' Settlement; (3) appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel; (4) approving the form of the parties' proposed California Class Notice and FLSA Collective Notice; and (5) scheduling a hearing on the final approval of the Settlement and approval of attorneys' fees and costs and Plaintiff's service award.

The Settlement is fair and reasonable, satisfies the Rule 23 and FLSA collective action requirements, and is worthy of approval. The Net California Settlement Fund of **$646,229.17**, which is 85% of the Net Distribution Fund of **$752,916.67**, available to pay claims to Participating California Settlement Class Members represents approximately **11%** of the total estimated potential liability exposure of **$5,875,724.79** for Plaintiff's main claims. (Yeremian Decl., ¶¶ 54, 82, 85). Also, the average Individual California Class Settlement Payment if there are **5,599** participating California Settlement Class Members from the Net California Distribution Fund of **$646,229.17**, using a straight average, is approximately **$115.42**. (Yeremian Decl., ¶ 85).

For the FLSA Claim, the Net Non-California Settlement Fund of **$112,937.50**, which is 15% of the Net Distribution Fund of **$752,916.67**, available to pay claims to **3,371** FLSA Settlement Collective Members represents approximately **162%** of the total estimated potential liability of **$70,000** for Plaintiff's claims for unpaid overtime due to an incorrect regular rate calculation. (Yeremian Decl., ¶¶ 62, 63, 82, 86). With an estimated total of **3,371** FLSA Collective Members, the average payment to them from the **$112,937.50** Net FLSA Distribution Fund available using a straight average is approximately **$33.50** per employee. (Yeremian Decl., ¶ 86).

The total Net Distribution Fund to be paid to the California Class Members and FLSA Collective Members ($752,916.67) is **12.66%** of the potential liability exposure on the main claims ($5,945,724.79), and the Total Settlement Amount ($1,300,000.00) is **21.86%** of the total estimated potential liability exposure to Defendant on those claims. (Yeremian Decl., ¶ 111). Class Counsel submits these results are in the range of reasonableness for final approval.

## II.  **PROCEDURAL HISTORY OF THE CASE**

### A.  **The Proceedings, Pleadings, and Parties**

Plaintiff and the California Class Members and the FLSA Collective Members worked as

hourly, non-exempt retail store employees at Defendant's store locations during the relevant period of **December 15, 2013** through **January 31, 2019**. (Yeremian Decl., ¶ 11). Plaintiff's Complaint, filed on **December 15, 2017** in Alameda County Superior Court, alleged nine causes of action against Defendant for: (1) failure to pay minimum wages; (2) failure to pay wages and overtime under <u>Labor Code</u> § 510; (3) failure to pay wages under the FLSA, 29 USC §§ 201, 206, 207 *et seq.*; (4) meal period liability under <u>Labor Code</u> § 226.7; (5) rest-break liability under <u>Labor Code</u> § 226.7; (6) violation of <u>Labor Code</u> § 226(a) for inaccurate wage statements; (7) Violation of <u>Labor Code</u> § 221; (8) waiting time penalties for violation of <u>Labor Code</u> § 203; and 9) violation of <u>Business & Professions Code</u> § 17200 *et seq*. (Yeremian Decl., ¶ 12). The Complaint followed Plaintiff's PAGA Notice Letter submitted to the LWDA on **November 10, 2017**. (*Id.* at ¶ 13).

Defendant removed this action to this honorable Court on **January 12, 2018** (ECF # 1). Plaintiff filed a First Amended Complaint to add the tenth claim for PAGA penalties pursuant to California <u>Labor Code</u> § 2699, *et seq.* ("PAGA") on **January 31, 2018** (ECF #14). (Yeremian Decl., ¶ 13). Following initial discovery and conference of counsel, on **April 30, 2018**, Plaintiff filed a Second Amended Complaint adding a cause of action for failure to reimburse business expenses under <u>Labor Code</u> § 2802 and further articulating the wage claims (ECF # 33). (*Id.*).

The parties completed their initial disclosures and conducted their Initial Case Management Conference on **April 27, 2018**, and on **May 11, 2018**, the Court issued its Case Management and Pretrial Order (ECF # 35) setting case management dates through class certification. (Yeremian Decl., ¶ 15). After the parties informed the Court of their scheduled mediation with Steve Rottman, Esq. on **August 17, 2018**, the Court set a mediation completion deadline of **August 31, 2018**. (*Id.*).

The parties completed their first mediation with Steve Rottman, Esq. on **August 17, 2018** and, despite making great progress towards arriving at an amicable resolution, they were unable to do so. (Yeremian Decl., ¶ 16). The parties then scheduled a second mediation with Steve Rottman, Esq. on **December 18, 2018**, where they were able to arrive at the general terms governing their agreed upon Settlement of Plaintiff's class and collective claims in the Action. (Yeremian Decl., ¶ 17). The parties then filed a Notice of Settlement and Request to Vacate the remaining dates while the parties prepared their Settlement Agreement (ECF # 40), which the Court granted (ECF # 41).

1    The Court later agreed to continue the filing to **March 22, 2019** with the motion for preliminary

2    approval hearing on **April 26, 2019**. (ECF # 43). At the hearing, the Court denied the motion for

3    without prejudice and granted Plaintiff leave to file a renewed motion for preliminary approval

4    with amended documents reflecting the required revisions (ECF # 45). (Yeremian Decl., ¶ 16).

5           The parties entered into the Amended Joint Stipulation of Settlement of Class and

6    Collective Action Claims (ECF # 47-2) addressing the Court's required revisions, with an

7    proposed Amended Class Notice, and filed a renewed motion for its preliminary approval on **May**

8    **24, 2019**. (ECF # 47). At the hearing on **June 28, 2019**, the Court denied the motion without

9    prejudice (ECF # 49), and granted Plaintiff leave to file a second renewed motion for preliminary

10   approval with an amended Settlement, Notice and other documents addressing the various changes

11   and additions the Court required. (Yeremian Decl., ¶ 18; and Exhibit 1, Settlement Agreement).

12          The Court required eight different categories of revisions to the Settlement and Notice

13   document, which are summarized in detail by Class Counsel. (Yeremian Decl., ¶ 19).  Class

14   Counsel also provides a detailed explanation of the steps the parties have taken to address the

15   Court's requirements. (Yeremian Decl., ¶¶ 20-29, 40).

16          **B.    <u>Summary of Discovery Conducted Prior to Mediation</u>**

17          Plaintiff's complaints have been based upon substantial pre-filing research, both factual

18   and legal. (Yeremian Decl., ¶¶ 30-41). Defendant has produced documents, ESI and class data

19   responsive to Plaintiff's informal and formal discovery requests. The parties' counsel conducted

20   numerous further conferences and exchanged correspondence on Plaintiff's claims, Defendant's

21   defenses, and the scope of discovery. (Yeremian Decl., ¶¶ 30-31). They agreed to begin informal

22   discovery and exchanging details regarding the claims and defenses and items Plaintiff believed

23   were required to complete a constructive mediation. (*Id*.). The production included a Class List

24   for the California Class Members, including contact information, employment dates, and

25   workweeks worked, and a sampling of timekeeping records for representative stores and periods

26   and corresponding payroll records, along with over 6,000 pages of documents. (*Id*. at ¶¶ 32-33).

27          The FLSA claim asserted that, during the pay periods when the Collective Members

28   received non-discretionary, performance-based bonuses or incentive pay, and worked overtime,

Defendant failed to include them in the regular rate for paying overtime. (Yeremian Decl., ¶ 34). Defendant agreed to conduct an analysis of its payroll and timekeeping records for the employees in all states where it operates to identify the applicable pay periods where they worked overtime and received a bonus, and Defendant provided the amount of underpayment of overtime to each employee in each qualifying pay period. The data and analysis spanned the FLSA Collective period of **December 15, 2014** through opt-in, and will be updated with the administrator. (*Id.*).

Class Counsel also explains the further production and investigation conducted, and that Defendant provided Class Counsel with copies of all applicable versions of its relevant policies and procedures. (Yeremian Decl., ¶¶ 35-39). The parties also importantly established that the AMRG handbook and other policy documents applied uniformly to the Wilson's Leather stores throughout California and nation-wide, and also applied to Defendant's employees for all of the other stores under its umbrella, thus reinforcing Plaintiff's adequacy to represent the Class and Collective. (*Id.* at ¶ 37). Plaintiff has provided further details regarding typicality and Plaintiff's adequacy to represent the employees across all retail store locations for all stores under Defendant's operational control, which has resulted from this discovery, including by addressing the uniform policies and practices that applied. (Yeremian Decl., ¶¶ 28, 37, 138(d), 138(e)).

Prior to the mediations, the parties also informally exchanged further class data and numbers necessary to complete a constructive mediation. This included and now includes class and work week numbers, average wage rates, and information either provided by Defendant or drawn from production, which is summarized by Class Counsel. (Yeremian, ¶¶ 38-39). Class Counsel provided the above data and information to Plaintiff's statistical analysis expert to assess the data and information and help Class Counsel prepare a credible and realistic damages model. From this data, Class Counsel drew conclusions based on information received and records reviewed.  (*Id.* at ¶ 38).

C.    <u>**Mediation and Defendant's Estimated Liability Exposure**</u>

Finding their respective interests best served by compromise, the parties agreed to mediate after conducting the above described discovery and investigation, and did so on **August 17, 2018** and **December 18, 2018** in Los Angeles, California with well-respected wage and hour mediator Steve Rottman, Esq. (Yeremian Decl., ¶¶ 15-17, 42-44). After two days of substantive negotiation,

1   the parties arrived at the general terms governing their agreed upon Settlement of all of Plaintiff's

2   class and collective claims in the Action. The parties entered into a Memorandum of Understanding

3   and then memorialized their Settlement in the original Agreement the Court considered at the **April**

4   **26, 2019** hearing. (ECF # 45). It has since been amended as required by the Court.

5       At all times, the parties' settlement negotiations have been non-collusive, adversarial, and

6   at arm's length, while recognizing the uncertainty, risk, expense, and delay attendant to continuing

7   the Action through trial and any appeals. (Yeremian Decl., ¶ 42; Exhibit 1, Settlement, ¶¶ 12.7,

8   12.8, 9.2, 11.2). The parties reached their Settlement only after evaluating Plaintiff's theories of

9   potential exposure for the underlying claims, and, with the assistance of the mediator, considering

10  discounts to potential liability in light of Defendant's contentions and defenses. (Yeremian Decl., ¶

11  44). Class Counsel developed a damages model and calculated maximum potential liability

12  exposure Defendant faced on the claims as follows.  (*Id.* at ¶¶ 45-64).

13              **1.      Liability Exposure for California Unpaid Wages Claims**

14      Plaintiff alleged that (1) employees were not able to record timekeeping entries when

15  registers were closed, which resulted in managers entering incorrect after the fact time punches that

16  did not pay for all hours worked; (2) off the clock work occurred before work shifts, including

17  when employees had yet to enter time punches into the register; and (3) managers overrode time

18  entries or inputted them for less hours than were worked or otherwise rounded them down to ensure

19  timekeeping records reflected employees did not work over six hours on occasions when they did.

20  (Yeremian Decl., ¶ 45). Defendant refuted these allegations and asserted its policies and practices

21  were compliant and individualized and unmanageable questions would predominate over those

22  amenable to class treatment. Moreover, as there is no written record of the alleged off the clock

23  work, Defendant argued there was no way to determine how much time was not separately

24  compensated, and individualized issues predominated requiring individual inquiries that precluded

25  Rule 23 certification and rendered any proposed class or collective trial unmanageable. (*Id.*).

26      Plaintiff estimated the California Class members endured approximately 5 minutes of off the

27  clock work per work shift, including in the manner described above. (Yeremian Decl., ¶ 46).  Using

28  an estimated 4 shifts per week, this is a total of 20 minutes per week (i.e. .3333 hour).  Using

1   70,864 work weeks, and a regular hourly rate of $16.54, resulted in **$390,692.94** in unpaid wages.

2   (*Id*.). Plaintiff also estimated .25 hours (15 minutes) of unpaid overtime hours worked per week.

3   (Yeremian Decl., ¶ 47). Using the same other numbers for the regular rate and an overtime hourly

4   rate of $25.41/hr resulted in **$450,163.56** in unpaid overtime for off the clock work. (*Id*.).

5       Total estimated liability exposure for unpaid wages for the California Class, for regular and

6   overtime hours, was therefore estimated to be **$840,856.50**. (Yeremian Decl., ¶ 48). Plaintiff

7   considered that in increase of 66% in the total workweeks (from 70,864) would be 117,643.24 work

8   weeks. (*Id*.). Using that number results in an increase to **$648,541.53** for unpaid regular time and

9   **$747,328.68** for unpaid overtime, for a total of **$1,395,870.21** in estimated potential liability

10   exposure for unpaid regular and overtime wages under the California <u>Labor Code</u>. (*Id*.).

11       **2.    Liability Exposure for California Meal Period Violations**

12       Class Counsel, with the assistance of its statistical analysis expert, calculated a potential

13   meal period violation rate. (Yeremian Decl., ¶ 49). Plaintiff also asserted that Defendant's policies

14   prevented Class members from leaving the sales floor unattended during meal periods and rest

15   breaks, thus evidencing alleged control over employees during their breaks. Shifts were generally

16   not for greater than ten hours, but when they were, Plaintiff alleged he was not provided a second

17   30-minute meal period. Plaintiff also alleged that Defendant's policy for meal periods and rest

18   periods did not provide employees with the ability to leave the store premises. (Yeremian Decl., ¶

19   49). Defendant asserted its policies were compliant, that Plaintiff and the California Class members

20   were provided with the opportunity to take duty-free and timely meal periods, and that

21   individualized issues predominated as to when Class Members took meal periods. (*Id*.).

22       Plaintiff's expert used the above described data to estimate a meal period violation rate that

23   led to **$1,812,961** in potential liability exposure. (Yeremian Decl., ¶ 50). Using the number of

24   117,643.24 workweeks, a rate of $16.54/hr, and a conservative estimate of 1 meal period violation

25   per work week led to **$1,945,819.19** in estimated meal period premium penalty wages. (*Id*.).

26       **3.    Liability Exposure for Rest Period Claims**

27       Given the above numbers and similar to the meal period analysis, Plaintiff presumed a

28   conservative one rest period violation per work week to arrive at **$1,945,819.19** in estimated rest

1   period premium penalty wages. (Yeremian Decl., ¶ 51).

2   **4.      Liability Exposure for California Expense Reimbursement**

3   Plaintiff alleged he and other Class members were required by their managers to take

4   pictures with their personal cellular telephones of their store locations, floor plans, product displays

5   and windows, and were contacted by managers regarding job duties and scheduling and other work

6   requirements on their cell phones (both on and off duty). (Yeremian Decl., ¶ 52). Plaintiff estimated

7   that he and the class members were not reimbursed for approximately $5 in expenses per

8   workweek. (*Id.*). Defendant asserting that the Class Members were not required to incur these

9   expenses and were reimbursed for necessary ones. The following estimated liability exposure for

10  unpaid expense reimbursement resulted: 117,643.24 work weeks  x $5.00 per workweek  =

11  **$588,216.20** in alleged unpaid expense reimbursements.  (Yeremian Decl., ¶ 53).

12  **5.      Liability Exposure for Other California Claims, Summary**

13  Class Counsel provides a summary of the PAGA claim exposure calculation and addresses

14  the focus on valuation of the main claims and not those under <u>Labor Code</u> §§ 203 and 226.

15  (Yeremian Decl., ¶¶ 54-57). The Net California Settlement Fund of **$646,229.17**, which is 85% of

16  the Net Distribution Fund of **$752,916.67**, available to pay claims to Participating California

17  Settlement Class Members represents approximately **11%** of the total estimated potential liability

18  exposure of **$5,875,724.79** for Plaintiff's main claims. (Yeremian Decl., ¶¶ 54, 82, 85). Also, the

19  average Individual California Class Settlement Payment if there are **5,599** participating California

20  Settlement Class Members from the Net California Distribution Fund of **$646,229.17**, using a

21  straight average, is approximately **$115.42**. (Yeremian Decl., ¶ 85).

22  **6.      The FLSA Collective Claims**

23  Plaintiff submitted a Consent to Join form (ECF # 20) opting into the FLSA Collective and

24  has consented to representing other similarly situated employees, and the FLSA claims arise from

25  failure to calculate the regular rate of pay used to pay overtime during pay periods when FLSA

26  Collective Members also received a non-discretionary and performance based bonuses and

27  incentive payments. (Yeremian Decl., ¶¶ 58-60). The FLSA Collective Members therefore include

28  of all Defendant's current and former non-exempt, hourly retail store Employees who worked based

1   out of any of Defendant's locations throughout the United States and were not paid all overtime

2   wages they were due based on Defendant's calculation methodology. (*Id.*).

3        Defendant did not dispute that it failed to include the bonus in the regular rate used to

4   calculate and pay overtime, and worked with Plaintiff's counsel to quantify the amount of unpaid

5   overtime by calculating the unpaid difference between the original calculation and a corrected one

6   including the bonus in the regular rate. (Yeremian Decl., ¶ 60). Defendant conducted an analysis of

7   its payroll and timekeeping records for the employees in all states where it operates to identify the

8   applicable pay periods to each employee. Defendant also compiled data listing the overtime hours

9   they worked, the bonus they were paid, and the original calculation and payment of overtime

10  without including the bonus in the regular rate. Defendant also calculated the corrected regular rate

11  including the bonus and the overtime that should have been paid. Finally, Defendant provided the

12  amount of underpayment of overtime to each employee in each qualifying pay period. (*Id.*).

13       Through the first mediation, Defendant's records and calculations established a total unpaid

14  overtime amount to 3,142 FLSA Collective Members of **$27,144.91**. This resulted from **8,635** pay

15  periods worked by employees in 37 states during which an employee received a bonus and worked

16  overtime and when the alleged violations occurred. (Yeremian Decl., ¶ 61). Plaintiff concluded that

17  Defendant underpaid at least **$27,144.91** to the FLSA Collective Members under the FLSA's

18  requirements. Under 29 U.S.C. § 216(b), entitled "Damages; right of action; attorney's fees and

19  costs; termination of right of action," "Any employer who violates the provisions of section 206 or

20  section 207 of this title shall be liable to the employee or employees affected in the amount of their

21  unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an

22  additional equal amount as liquidated damages." Therefore, Plaintiff estimated that liquidated

23  damages of double the unpaid overtime would total of **$54,289.82**. Plaintiff is also entitled to costs

24  and interest. A conservative estimate of interest is over $15,000, and this would bring to total to

25  approximately **$70,000.00**. (Yeremian Decl., ¶ 62).

26       The Total Settlement Amount is **$1,300,000**, and the Net FLSA Settlement Fund after

27  approved deductions, and which is **15%** of the Net Distribution Fund, is estimated at **$112,937.50**.

28  (Yeremian Decl., ¶ 83). This represents approximately **162%** of the total estimated potential

liability of **$70,000** for Plaintiff's claims for unpaid overtime due to an incorrect regular rate calculation. (Yeremian Decl., ¶¶ 62, 63, 82, 86). With an estimated total of **3,371** FLSA Collective Members, the average payment from the **$112,937.50** Net FLSA Distribution Fund using a straight average is approximately **$33.50** per employee. (Yeremian Decl., ¶ 86). If the total is less than $10.00, the FLSA Settlement Collective Member will receive a check for **$10.00**. (*Id*.).

### 7.   Total Potential Liability and Percentage of Recovery

The Net Distribution Fund, if all requested allocations from the Total Settlement Amount are approved, totals approximately **$752,916.67**. The total estimated liability exposure Class Counsel calculated for the main California Class Claims and the FLSA Collective Claims totals approximately **$5,945,724.79**. (Yeremian Decl., ¶ 111). Therefore, the total Net Distribution Fund to be paid to the California Class Members and FLSA Collective Members is **12.66%** of the potential liability exposure Defendant faced on Plaintiff's main claims. (*Id*.). The Total Settlement Amount ($1,300,000.00) is **21.86%** of the estimated exposure. Plaintiff submits this number is fair and reasonable in light of the risk of no recovery following protracted litigation and Defendant's policies following the *Ruch* settlement, and for all the reasons addressed herein. (*Id*.).

## III.   SETTLEMENT TERMS

### A.   Value of the Settlement to the Class

Defendant has agreed to pay a Total Settlement Amount of one million, three hundred thousand dollars (**$1,300,000**) in connection with this non-reversionary Settlement. (Yeremian Decl., ¶ 65; Exhibit 1, Settlement, ¶ 2.34).

### B.   Size of the Classes and the Class Definitions

For purposes of the Settlement, the parties are requesting that the Court conditionally certify the California Class Claims and the FLSA Collective Claims as defined above and in counsel's declaration, and in the Notices. (Yeremian Decl., ¶ 66). The California Class Claims do not encompass the FLSA Collective Claims, and the FLSA Collective Claims do not encompass the California Class Claims. (*Id*). Defendant also provided the following updated numbers: (1) **3,371** FLSA Collective Members; (2) **5,598** California Class Members; (3) **8,969** total California Class and FLSA Collective Members; and (4) total of **739** employees are members of both the California

1   Class and FLSA Collective. (Yeremian Decl., ¶ 39).

2   **C.**     **Nature of the Payments and Notice, Exclusion, Objection Periods**

3   This is a common fund settlement with no reversion. Every California Settlement Class

4   Member who does not opt-out will receive an Individual Settlement Payment. FLSA Settlement

5   Collective members will automatically receive a check for their Collective Action Settlement

6   Payment, and endorsing the check and cashing it will constitute opting into the FLSA Settlement

7   Collective. (Yeremian Decl., ¶ 67, Exhibit 1, Settlement, ¶¶ 2.16-2.17, 2.19-2.20). The release for

8   the FLSA Collective Claims will run through the date the Collective Members cash individual

9   settlement payment checks, rather than **January 31, 2019** as for the California Class. (*Id.*).

10   Members of the California Class who want to be excluded from the Settlement must mail a

11   written Request for Exclusion to the Claims Administrator no later than 45 calendar days after the

12   original mailing of the Class Notice. Class and collective members will also have 45 days from the

13   mailing of the Class Notice to object to the Settlement. (Yeremian Decl., ¶ 69, Exhibit 1,

14   Settlement, ¶¶ 2.12, 7, 7.1-7.6, 8, 8.1-8.4). The details of the exclusion and objection procedures

15   are addressed in the California Class Notice at Exhibit A and FLSA Collective Notice at Exhibit B

16   to the Settlement. (*Id.*). The Settlement and Notices have been amended to clarify that the FLSA

17   Collective Members may elect not to participate by simply not cashing their checks, and to clarify

18   the differences between releases for the California Class and FLSA Collective Members.

19   (Yeremian Decl., ¶ 69; Exhibit 1, Settlement, ¶¶ 2.17, 2.18, 2.20, 4.13, 4.14, 6.4, 6.5, 7.1 – 7.5).

20   **D.**     **The Released Claims and Released Parties**

21   The California Class and FLSA Collective Notices also address the releases under the

22   Agreement, and make it clear they are based on the factual predicate stated in the second amended

23   complaint. *See, Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010). The California Settlement

24   Class Members' Released Claims and the FLSA Settlement Collective Members' Released Claims

25   are released as to the Released Parties under the Settlement. (Yeremian Decl., ¶¶ 70-75; Exhibit 1,

26   Settlement, ¶¶ 2.4, 2.15, 2.18, 4.12-4.17, 6.3, 6.4). The Released Parties are AM Retail Group and

27   related entities. (*Id.* at ¶ 71; Settlement, ¶ 2.29). The FLSA Class Members release their FLSA

28   Collective Claims upon cashing their checks, which will include language opting into the FLSA

1   Collective. (Yeremian Decl., ¶¶ 73, 92; Settlement, ¶ 2.17, 2.18, 4.13, 6.3, 6.4).

2          Plaintiff will also provide a Complete and General Release, including a release of unknown

3   claims under California Civil Code § 1542. (Yeremian Decl., ¶ 62; Settlement, ¶¶ 2.9, 4.11). The

4   parties have also stipulated to a release of unknown claims for unknown injuries with respect to the

5   California Settlement Class Members' Released Claims and the FLSA Settlement Collective

6   Members' Released Claims, again limited to claims that were or could have been asserted based on

7   the facts alleged in the operative complaint. (*Id.*; Settlement, ¶ 2.36, 4.16).

8          **E.    Attorney's Fees, Costs, Enhancement, Administration, PAGA**

9          The Total Settlement Amount of $1.3 million covers the Class Counsel Award (including

10   fees up to $433,333.33 and costs up to $15,000), the Service Award to the Plaintiff (up to

11   $10,000), the Settlement Administrator Expenses ($65,000), the PAGA Payment ($25,000), the

12   Individual Settlement Payments, the Reserve Fund ($5,000), all related interest, and all employee-

13   side payroll and employment taxes, and all tax expenses. The Total Settlement Amount does not

14   include employer-side payroll and employment taxes for wage payments under the Agreement,

15   which Defendant agrees to pay separately. (Yeremian Decl., ¶¶ 76-81; Settlement, ¶¶ 2.6, 2.19,

16   2.20, 2.26, 2.30, 2.32, 2.33, 2.34, 2.37, 4.1, 4.3, 4.4, 4.5).

17          **F.    The Net Distribution Funds; Calculations and Payments to Classes**

18          The Total Settlement Amount minus the above allocations as approved by the Court is the

19   Net Distribution Fund, which is estimated to be **$752,916.67**, and this amount will increase with

20   the addition of any un-awarded portions of the allocations. (Yeremian Decl., ¶ 82, Settlement, ¶

21   2.23). The Net Distribution Fund will be paid in its entirety to the class and collective members

22   who participate in the Settlement and will be divided into two separate funds. (Yeremian Decl., ¶

23   83; Settlement, ¶ 4.7). The "Net California Distribution Fund" is 85% of the Net Distribution Fund

24   plus the portion of the PAGA Payment to be distributed to the California Class members ($6,250),

25   totaling **$646,229.17**. (*Id.* at Settlement, ¶ 2.24, 4.7). The "Net FLSA Distribution Fund" is 15% of

26   the Net Distribution Fund, estimated to be **$112,937.50**. (*Id.* at Settlement, ¶ 2.25, 4.7).

27          The Individual California Class Settlement Payments from the Net California Distribution

28   Fund will be calculated on a *pro-rata*, workweek basis, while the Individual Collective Action

1   Settlement Payments from the Net Non-California Distribution Fund will correspond to the amount

2   of the unpaid overtime incurred by the FLSA Settlement Collective Members, and the details of the

3   calculation methodology are further addressed in the Settlement, the Notices, and Class Counsel's

4   Declaration. (Yeremian Decl., ¶¶ 82-87; Settlement, ¶¶ 2.23-2.25, 4.7, 4.7.1, 4.7.2, 4.11).

5          With an estimated **5,599** California Class members, the average payment to them from the

6   Net California Distribution Fund of **$649,229.17** using a straight average is approximately **$115.42**

7   per employee. (Yeremian Decl., ¶ 85). With an estimated total of **3,371** FLSA Collective

8   Members, the average payment to them from the **$112,937.50** Net FLSA Distribution Fund using a

9   straight average is approximately **$33.50** per employee. If the total is for less than $10.00, the

10  FLSA Settlement Collective Member will receive a check for $10.00. (Yeremian Decl., ¶ 86). For

11  all these Individual Settlement Payments, not only will these payouts be higher with any

12  redistributed funds from allocations the Court does not approve (*see* Yeremian Decl., Exhibit 1,

13  Settlement, ¶¶ 2.6, 2.23, 2.26, 2.30, 4.3, 4.4, 4.5), but the class and collective members with longer

14  periods of employment and more overtime will receive higher amounts.

15         **G.**     **Notice Procedures**

16         The Settlement Administrator, Rust Consulting, Inc., will provide Notice of the Settlement

17  to the class/collective members by U.S. mail. (Yeremian Decl., ¶ 88; Exhibit 1, Settlement, ¶¶ 6,

18  6.1-6.13). The California Class Notice, at **Exhibit A** to the Settlement, will be mailed to the

19  California Class Members. The FLSA Collective Notice, at **Exhibit B** to the Settlement, will be

20  sent to the FLSA Collective Members.  (*Id*. at ¶ 2.8). Those employees who are both California

21  Class Member and FLSA Collective Members will be sent both Notices, and both Notices will

22  explain the California Settlement Class and the FLSA Collective and their differences. (*Id*.).

23         The Class Notice, at **Exhibit A** to the Settlement, is drafted to efficiently yet

24  comprehensively describe the terms of the Settlement. After Defendant provides the Class

25  Information to the Administrator within 10 days of preliminary approval, the mailing deadline for

26  the Class Notices is 20 days after preliminary approval. (Yeremian Decl., ¶ 89; Exhibit A,

27  Settlement, ¶ 6.1). Returns are addressed in the Settlement and counsel's Declaration, and a case

28  web-site will be set up by the Administrator to provide relevant documents and information.

1   (Yeremian Decl., ¶ 90; Settlement, ¶¶ 6.8, 6.11). Class/collective members will then have forty-five

2   (45) days from the mailing of the Class Notice to opt out of or object to the Settlement, but FLSA

3   Collective Members will exclude themselves by simply not cashing their checks to opt-in to the

4   FLSA Collective. (Yeremian Decl., ¶ 91-95; Exhibit 1, Settlement, ¶¶ 6.5, 7.1-7.6 for Requests for

5   Exclusion, ¶¶ 6.6, 8.1-8.4 for Objections). Notices will provided work weeks and pay periods and

6   estimated payments the Class and Collective member will receive, and the Notices and Settlement

7   provide procedures for challenging the information from Defendant's records. (Yeremian Decl., ¶¶

8   95-98). The procedures set forth in the Settlement Agreement and the Class Notice comply with the

9   due process requirements of Rule 23 and constitute the best practicable notice under the

10  circumstances. (Yeremian Decl., ¶¶ 98-100; Exhibit 1, Settlement, ¶ 6.12).

11  **H.   Tax Allocations, the Reserve Fund, Uncashed Checks, and Cy Pres**

12  The Settlement Administrator will allocate one-third (1/3) of each Individual California

13  Settlement Payment to wages and the remaining two-thirds (2/3) to penalties and interest. The

14  Individual Collective Action Settlement Payments paid to the FLSA Settlement Collective

15  Members will be allocated 100% to wages. (Yeremian Decl., ¶ 101; Settlement, ¶ 4.8).

16  As required by the Court, the parties have amended the Settlement to establish a Reserve

17  Fund and to explain its formation, operation, and interaction with the payment to the *cy pres*

18  beneficiary. (Yeremian Decl., ¶ 102; Exhibit 1, Settlement, ¶¶ 4.1, 10.3, and 10.3.1 – 10.3.5; *see*

19  *also* Notices at Exhibits A-B, ¶ 4(a)(7)). The Reserve Fund is an allocation of **$5,000.00** from the

20  Total Settlement amount set aside to address the contingency that there may be some California

21  Class and FLSA Collective Members who may be entitled to an Individual Settlement Payment,

22  but who were not identified or located before the Notices are mailed and/or the initial distribution

23  of Individual Settlement Payments.  (*Id*. at ¶ 10.3.5).  If any portion of the Total Settlement

24  Amount cannot be distributed to the California Settlement Class Members or the FLSA Settlement

25  Collective Members, or if any the Individual California Class and Collective Action Settlement

26  Payments are declined or checks are not cashed by the Void Date, they will be voided by the

27  Settlement Administrator and the value of any such uncashed checks will be placed in the Reserve

28  Fund. (Yeremian Decl., ¶ 102; Exhibit 1, Settlement, ¶ 10.3.1). Settlement Class and Collective

1  Members may request payments from the Reserve Fund for up to 180 days from the Effective

2  Date. (*Id.* at ¶ 10.3.4). Class Counsel further summarizes the Reserve fund, the procedures the

3  Administrator will follow before voiding checks to attempt to locate employees. (Yeremian Decl.,

4  ¶ 102; Exhibit 1, Settlement, ¶¶ 4.1, 6.8 – 6.10, 10.3.1 – 10.3.5).

5        If any portion of the Total Settlement Amount cannot be distributed to the California

6  Settlement Class Members and/or the FLSA Settlement Collective Members, or if any the

7  Individual California Class and Collective Action Settlement Payments are declined or checks are

8  not cashed by the Void Date, then within thirty (30) days after the Void Date, the Settlement

9  Administrator will pay all unallocated and unclaimed and residual funds remaining in the Reserve

10 Fund, along with any accrued interest on the Reserve Fund, to the party identified as the *cy pres*

11 recipient. (Yeremian Decl., ¶ 103; Exhibit 1, Settlement, ¶¶ 10.3.4, 10.3.5). The parties request

12 approval of Legal Aid at Work ("LAAW") as the *cy pres* beneficiary, and submit that LAAW bears

13 a substantial nexus to the interests of the absent Class and Collective Members. (*Id.*).

14 **IV.     ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL**

15       **A.     Standard of Review for Class Action Settlements**

16       Actions brought as class actions may only be settled with court approval. *See* Fed. R. Civ.

17 Proc. 23(e). There is a presumption that settlement negotiations were conducted in good faith, but

18 nevertheless, "district courts should review class action settlements just as carefully at the initial

19 stage as they do at the final stage. At the initial stage, the inquiry should be whether the settlement

20 is "fair, reasonable, and adequate," based on any information the district court receives from the

21 parties or can obtain through its own research." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037

22 (N.D. Cal. 2016). Rule 23(e)(2) of the Federal Rules of Civil Procedure states that the district

23 court may only approve the settlement if, taken as a whole, "it is fair, reasonable, and adequate."

24 *See also, Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). In determining whether

25 to finally approve a settlement, the district court must balance "the strength of the plaintiffs' case;

26 the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining

27 class action status throughout the trial; the amount offered in settlement; the extent of discovery

28 completed and the stage of the proceedings; the experience and views of counsel; the presence of

1    a governmental participant; and the reaction of the class members to the proposed settlement." *Id.*

2         While it is less clear what standard should drive the preliminary approval process, "[s]ome

3    district courts... have stated that the relevant inquiry is whether the settlement 'falls within the

4    range of possible approval' or 'within the range of reasonableness.'" *Cotter*, 176 F. Supp. 3d at

5    935 (citing *In re High–Tech Emp. Antitrust Litig.,* No. 1–CV–02509–LHK, 2014 WL 3917126, at

6    *3 (N.D. Cal. Aug. 8, 2014); *see also, id.* ("perhaps the most important factor to consider is

7    'plaintiffs' expected recovery balanced against the value of the settlement offer.'"). Where both

8    sides face significant uncertainty, the attendant risks favor settlement. *Hanlon*, at 1026. The

9    Court's scrutiny of the proposed settlement is as rigorous at preliminary approval as at the final

10   approval stage. *See, e.g., Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036-37 (N.D. Cal. 2016).

11                    **1.      Strength of Plaintiff's Case, Mediation Supports Approval**

12        Courts presume a settlement is fair. The settlement here was reached through arm's-length

13   bargaining between counsel, with a respected mediator, which included offers and counteroffers

14   and eventual agreement over two separate mediations. (Yeremian Decl., ¶¶ 15-17, 42-44). Class

15   Counsel was confident in the merits of claims asserted, and likewise Defendant maintained that it

16   would be able to defeat a class certification motion and/or class claims on the merits, including an

17   anticipated motion for summary judgment. (*Id.* at ¶¶ 31-32, 45-64, 87-89). The parties preferred

18   this Settlement to facing protracted litigation and incurring costs and fees before this honorable

19   Court or the Ninth Circuit, and after considering the risks of proceeding through class certification

20   and trial. (*Id.* at ¶¶ 104-106, 107-116, 134-137).

21        Prior to mediation, both parties researched their claims and defenses to appropriately

22   evaluate the strengths and weaknesses of their respective cases, and did so in view of the

23   comprehensive class-wide discovery addressed above. (Yeremian Decl., ¶¶ 105-106). Prior to and

24   during the mediation, Defendant also voluntarily provided class data and information which

25   permitted an objective assessment of Defendant's potential liability exposure. (*Id.*)  At the

26   mediations and afterwards, both parties carefully weighed the risks and benefits of resolving the

27   case in comparison to proceeding with the motion for class certification and then potentially

28   before the Ninth Circuit. The parties concluded that the settlement terms were acceptable and the

MEMORANDUM SECOND RENEWED PRELIMINARY APPROVAL CLASS, COLLECTIVE SETTLEMENT

benefits of settling outweighed the risks of further litigation. (Yeremian Decl., ¶¶ 42-44, 104-106, 107-116, 134-137; Exhibit 1, Settlement, ¶¶ 9.2, 11.2, 12.7-12.8).

### 2. The Risk, Expense, Complexity, Likely Duration of Litigation

The parties have disputed the strength of Plaintiff's claims and the substantial risk of not attaining class certification under Rule 23. (Yeremian Decl., ¶¶ 31-32, 45-64, 87-89, 107-116; Exhibit A, Settlement, ¶¶ 9.2, 11.2, 12.7-12.8). Defendant produced all relevant policies, which are generally facially lawful following the *Ruch* settlement, so Plaintiff faced the prospect of proving an unlawful practice of alleged failure to pay employees all wages for all hours worked. Defendant refuted these allegations, and asserted there is no written record of off the clock work, and thus no way to determine how much time was allegedly not separately compensated, and individualized issues predominated raising individual inquiries that precluded Rule 23 certification and rendered any proposed class or collective trial unmanageable. (Yeremian Decl., ¶ 45, 56, 108, 138(g)). In light of Defendant's advocated defenses, the difficulties in proving off-the-clock work and liability for meal and rest periods, the number of class members, the uncertainty of certifying claims, and the manageability issues potentially presented across multiple store locations, and the *Ruch* settlement, this Settlement is within the range of reasonableness for approval. (Yeremian Decl., ¶¶ 31-32, 38, 45-64, 87-89, 98-99, 108, 112).

### 3. The Risk of Maintaining Class Action Status Through Trial

Class Counsel submits it has properly assessed the risks of continued litigation, including at trial and on appeal, in concluding the Settlement is fair. The above discussion also applies to the risks of maintaining this action through trial, as Plaintiff would have faced contested motion practice and continued expenses and delay to get to trial, would have faced manageability challenges at trial, and would have likely faced the additional time and delay required in further proceeding before the Ninth Circuit. (Yeremian Decl., ¶¶ 31-32, 45-64, 87-89, 107-116, 138(g); Exhibit A, Settlement, ¶¶ 9.2, 11.2, 12.7-12.8).

Defendant asserted its policies were facially compliant, especially following the prior litigation and settlement in the *Ruch* action (Yeremian Decl., ¶¶ 19, 21, 22, 40, 41, 91), and individualized issues predominated requiring individual inquiries that precluded Rule 23

certification and rendered any proposed class, collective or representative trial unmanageable. (Yeremian Decl., ¶¶ 45, 49, 108, 138(f)). This included arguing Defendant's compensation system accounted for all hours worked and Defendant did not require employees to attend to the sales floor during breaks, despite the language of its written policy. (Yeremian Decl., ¶¶ 37, 31, 49, 118, 138(e)). The uncertainty on the legal issues at the core of the claims and defenses further underscores the reasonableness of the proposed Settlement in the face of palpable risk. (Yeremian Decl., ¶¶ 43-44, 56, 108, 112).

The parties strongly contested the relative risks in this case, and adjusted them based on several factors, including recent case law, likelihood of success at certification, likelihood of success on the merits, and varying assumptions of alleged non-compliance with California law. (Yeremian Decl., ¶¶ 45, 49, 52, 57, 60, 61, 107-116, 134). Given the constantly shifting legal landscape of class action litigation, there is also a significant chance that any order or judgment in favor Plaintiff could be overturned on appeal, or certified claims could be decertified. (Yeremian Decl., ¶¶ 109-112). These were substantial risks, any of which could have resulted in the class/collective members receiving nothing by further litigation. (Yeremian Decl., ¶¶ 107-116).

### 4.   The Amount Offered In Settlement Is Fair and Reasonable

The parties strongly contested the relative risks in this case, including use of mathematical models of that risk. The class/collective/representative/manageability issues were contested by Defendant, who denied the claims and liability. The final settlement reflects a compromise in the respective parties' view of that risk, following a comprehensive analysis of Defendant's potential liability exposure. (Yeremian Decl., ¶¶ 45-64). The Net California Settlement Fund of **$646,229.17**, which is 85% of the Net Distribution Fund of **$757,916.67**, available to pay claims to California Settlement Class Members represents **11%** of the total estimated potential liability for Plaintiff's main claims of **$5,875,724.79**. (Yeremian Decl., ¶¶ 54, 82, 85). The Net FLSA Settlement Fund of **$112,937.50**, which is 15% of the Net Distribution Fund, available to pay claims to **3,371** FLSA Settlement Collective Members represents **162%** of the total estimated potential liability of **$70,000** for Plaintiff's claims for unpaid overtime due to an incorrect regular rate calculation. (Yeremian Decl., ¶¶ 62, 63, 82, 86). The total Net Distribution Fund to be paid to the California Class

Members and FLSA Collective Members ($752,916.67) is **12.66%** of the potential exposure on the main claims ($5,945,724.79), and a Total Settlement Amount ($1,300,000.00) is **21.86%** of Plaintiff's estimated liability exposure for Defendant ($5,945,724.79). (Yeremian Decl., ¶ 111).

These estimated percentages and payments represent real and substantial recoveries, and are appropriate in view of the state of the law and Plaintiff's claims and Defendant's defenses, as addressed above. *See, e.g., Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016); *see also* Yeremian Decl., ¶¶ 31-32, 45-64, 87-89). Settlement in class actions is preferable where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943, 950 (9th Cir. 1976). Here, the Settlement is fair and reasonable based on the strength of Plaintiff's claims and the risks and costs of further litigation, and the proposed Settlement compares favorably to the uncertainties of a continued and protracted litigation. *Nat'l Rural Telecomm. Coop. v. Hughes Commc'ns Galaxy, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Courts in the Ninth Circuit have observed that: "simply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). The settlement here is significantly more than a fraction, and provides recovery commensurate with the associated risk in the case.

### 5.    The Extent of the Discovery Completed, Stage of Proceedings

Class counsel completed comprehensive discovery to arrive at meaningful settlement negotiations and calculations. (*See,* Section II.B. above; *see also* Yeremian Decl., ¶¶ 30-41). The production included relevant policy documents and timekeeping records, which Plaintiff's statistical analysis expert reviewed with counsel to estimate violation rates and potential liability exposure to Defendant. (*Id.*). These efforts provided more than adequate factual bases which convinced the parties to arrive at a settlement that is well within the range of reasonableness.

MEMORANDUM SECOND RENEWED PRELIMINARY APPROVAL CLASS, COLLECTIVE SETTLEMENT

1

### 6.      The Experience and Views of Counsel

2      Another factor considered in determining the fairness of a settlement is the experience and

3  views of counsel.  *Hanlon*, 150 F.3d at 1026. Courts do not second guess the parties, or substitute

4  their judgment for that of the proponents of the settlement, and many courts give considerable

5  weight to the opinion of experienced counsel supporting the settlement. *See, e.g., Kirkorian v.*

6  *Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). Where there is no evidence of fraud or collusion,

7  courts presume they were conducted in good faith. *See Newberg on Class Action*, 3d Ed. § 11.51.

8      Class Counsel have practiced law for many years, have focused their practices on wage

9  and hour class actions, and have cumulatively been appointed class counsel or co-class counsel in

10  scores of class actions, obtaining substantial recoveries for hundreds of thousands of employees.

11  (Yeremian Decl., ¶¶ 3-9, 121-137; *see also* Declaration of Alvin B. Lindsay ("Lindsay Decl."), ¶¶

12  3-12; Declaration of Emil Davtyan ("Davtyan Decl."), ¶¶ 2-10). Defendant is represented by

13  Fraser A. McAlpine and Angel R. Sevilla of Jackson Lewis, P.C., a well-known employment

14  defense firm, and defense counsel are well-versed in litigating wage and hour class actions.

15  (Yeremian Decl., ¶ 10). The parties and counsel believe the Settlement is fair, reasonable, and

16  appropriate. (*Id.* at ¶¶ 43-44, 56, 108, 112; Exhibit 1, Settlement, ¶ 12.7-12.8).

17

### 7.      The Presence of a Governmental Participant

18      Plaintiff's counsel will submit the Settlement to the California LWDA concurrently with

19  the filing of this motion pursuant to <u>Labor Code</u> § 2699(l)(2). (Yeremian Decl., ¶ 114).

20  ## V.      <u>THE CLASSES SHOULD BE CONDITIONALLY CERTIFIED</u>

21      Plaintiff requests, and Defendant does not oppose, conditional certification of the

22  California Class Members and the FLSA Collective Members for the purposes of this Settlement

23  only. (Yeremian Decl., ¶¶ 10, 66(a)-(b), 115; Exhibit 1, Settlement ¶¶ 12.7-12.8).

24  ### A.      <u>The Settlement Classes Satisfy the Requirements of Rule 23</u>

25  #### 1.      The Numerosity Requirement is Satisfied

26      Rule 23(a) requires that the class be "so numerous that joinder of all members is

27  impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed California Class and FLSA

28  Collective total over 8,000, and numerosity is satisfied. (Yeremian Decl., ¶ 39, 138).

### 2.     Common Questions of Law and Fact Exist

Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule." *Hanlon*, *supra*, 150 F.3d at 1019.  Here, Plaintiff alleges several common questions of law and fact, including whether Defendant required off-the-clock work, or correctly included incentive pay and bonuses in the regular rate used for overtime payments, or required employees to work though breaks. While liability remains disputed, the parties determined that resolving the class claims is preferable to protracted litigation. (Yeremian Decl., ¶¶ 64, 105, 112, 115, 138(c), 138(f)).

### 3.     Claims of the Plaintiff Are Typical

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Plaintiff's and the class/collective members' claims arise from the same course of conduct and the same facts and legal theories, satisfying the typicality requirement. (Yeremian Decl., ¶ 118(d)). Defendant operated all its retail store locations, throughout California and nation-wide, under a uniformly applied company handbook and common policies and practices. Defendant's counsel has confirmed in discovery that: (1) All Employees who worked at any of the outlet stores under the AMRG umbrella (Wilson's Leather, GH Bass & Co., DKNY, etc.) in California and nation-wide were and are employees of Defendant AMRG; (2) There is a single HR Department under AMRG responsible for managing the employment of employees at all store locations; (3) There is a single Employee Handbook that applies to all retail store employees across all stores; (4) AMRG's policies relevant to the California Class Claims and the FLSA Collective Claims are the same for all retail store employees across all store locations in California and nation-wide, including regarding calculating and paying overtime; and (5) Plaintiff is a member of both the California Class and the FLSA Settlement Collective and will provide a declaration at final approval detailing his adequacy and the typicality of his claims. (Yeremian Decl., ¶¶ 19, 28, 37, 138(d)).

### 4.      Plaintiff and Class Counsel Are Adequate

Plaintiff and Class counsel provide adequate representation of the interests of the class and collective. Class Counsel has represented employees in numerous wage and hour lawsuits brought as class actions, and has ample resources, experience, and expertise to draw upon in representing the class in this action. (Yeremian Decl., ¶¶ 3-9, 103-117; Lindsay Decl., ¶¶ 3-12; Davtyan Decl., ¶¶ 2-8). Also, Plaintiff has established that the same policies and practices applied at the Wilson's Leather store where Plaintiff worked as to the other stores under AMRG's control, including those in California and nation-wide. Therefore, the violations Plaintiff has alleged against Defendant, for example being required to remain accessible to the sales floor during breaks and Defendant's uniform policy of not including incentive bonuses in the regular rate calculation, permit him to adequately represent employees at all of Defendant's store locations in California and in other states, and Plaintiff does not have any interests that are adverse to them. (Yeremian Decl., ¶¶ 19, 28, 37, 138(e)). Plaintiff will attest in connection with final approval that he is aware of his duties as class representative and has actively participated in the prosecution of this case to date. (Yeremian Decl., ¶¶ 117-120). Plaintiff will also confirm there is no antagonism between his interests and those of the class/collective members. (*Id*. at ¶¶ 118, 138(e)).

### B.      The Prerequisites of Rule 23(b) Are Also Satisfied

### 1.      The Predominance Requirement

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members." As noted in *Cotter*, "settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court[-]designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016). Here, adjudication of the common issues surrounding Defendant's alleged employment practices could establish Defendant's liability on a class-wide basis. Common legal issues could predominate because all class/collective members were subject to the same policies

and shared similar job duties and were subject to the alleged failure to pay for all hours worked at the correct rate. (Yeremian Decl., ¶¶ 19, 28, 45-64, 138(c), 138(d), 138(f)) Although an individual class/collective member may have incurred more off-the-clock hours than another, individual damages calculations will not defeat predominance. *See, e.g., Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150, 1155 (9th Cir. 2016). For settlement purposes only, Defendant does not dispute that its policies and practices applied to all of the class/collective members and does not dispute commonality or predominance.

**2. The Superiority Requirement**

To certify a class, the Court must also determine "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Where class wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Proceeding as a class action is superior to the alternative, which is individual suits by over 8,000 class/collective members against Defendant or protracted class certification fight on appeal. Given the current case posture and the Settlement Agreement, class-wide settlement is superior and will minimize further litigation costs and promote greater efficiency in resolving the claims at issue. (Yeremian Decl., ¶ 138(g)).

**VI. REQUESTED APPROVAL AND FEES, COSTS, ENHANCEMENT**

Plaintiff respectfully requests approval of the following Settlement allocations.

**A. The Requested Fees and Costs are Appropriate, and Class Counsel Will Submit Detailed Support for Them Prior to Final Approval**

The Settlement allocates, subject to the Court's approval, up to **$433,333.33** (or 33.33% of the Total Settlement Amount), to a Class Counsel Award of attorneys' fees and up to $15,000.00 to reasonable litigation costs. (Yeremian Decl., ¶¶ 77, 121-137). Class Counsel requests that this fee award be approved, along with any upward departure from the 25% benchmark counsel will justify at final approval and/or under the percentage of the common fund approach, and given that fees are also directly recoverable for FLSA claims. Class Counsel has the background and experience to zealously represent Plaintiff and the class/collective members. (Yeremian Decl., ¶¶ 3-9, 121-137;

1   Lindsay Decl., ¶¶ 3-12; Davtyan Decl., ¶¶ 2-10).

2          Prior to the hearing on the motion for final approval of the Settlement, Class Counsel will

3   request approval of their fees and costs, as addressed in the schedule in the [Proposed] Order, and

4   will provide detailed billing records and costs invoices to document hours worked and costs

5   incurred in this litigation. The specifics of the requested fees and costs are further addressed by

6   Class Counsel in their declarations. (Yeremian Decl., ¶¶ 130-132; Davtyan Decl., ¶ 8). Through the

7   filing of the previous motion for preliminary approval, Class Counsel had incurred at least **455**

8   **hours** and **$293,150** in fees. (Yeremian Decl., ¶ 130).  Since that filing on May 24, 2019, Class

9   Counsel has incurred 75 additional attorney hours and further lodestar fees of $49,450.00, thus

10  increasing the lodestar to **530 hours** and **$342,600.00** in attorneys' fees. (Yeremian Decl., ¶ 131).

11         Counsel anticipates that the present lodestar multiplier will be significantly lowered by

12  final approval, with the time incurred in taking this action through preliminary approval, settlement

13  administration, final approval, disbursement and final resolution. (Yeremian Decl., ¶ 132).

14  Additionally, through the last **May 24, 2019** filing Class Counsel had also incurred approximately

15  **$10,836.92** in reasonable litigation costs. (Yeremian Decl., ¶ 133). Since then, Class Counsel's

16  costs have increased to **$11,869.18**. (*Id.*). Any unawarded fees or costs will be returned to the Net

17  Distribution Fund for distribution to the California Settlement Class and FLSA Settlement

18  Collective Members in accordance with the above described procedures and calculations.

19  (Yeremian Decl., ¶ 77; Exhibit A, Settlement ¶¶ 2.6, 2.23, 4.4).

20         **B.      The Class Representative Enhancement Is Reasonable**

21         The Settlement calls for a Service Award to Plaintiff in the amount of up to **$10,000**.

22  (Yeremian Decl., ¶¶ 80, 117-120). Plaintiff assisted Class Counsel with investigation and

23  evaluation of the class claims, including producing documents and attending multiple telephonic

24  conferences and meetings with counsel. He has satisfied his obligations as class representative, has

25  incurred many hours in service to this case and the class members, and has been invaluable in

26  developing the claims, conducting discovery into them, and in reaching the Settlement that is

27  before the Court for approval. (Yeremian Decl., ¶¶ 117-120). Plaintiff will provide the Court with

28  a declaration addressing his efforts and support for the requested award, and the risks he undertook

1  in representing the California Class and FLSA Collective members. (*Id*.).

2        **C.**    **The Administrator and Administration Costs Should Be Approved**

3        The Settlement Agreement allocates **$65,000** to Settlement Administration fees and costs to

4  Rust Consulting. (Yeremian Decl., ¶¶ 139-140). The parties submit this is reasonable given the

5  size of the Class and Collective and the requirement to submit tax returns in 37 states where the

6  FLSA Collective members reside. (*Id*. at ¶ 139). Rust is well-respected, and Plaintiff requests

7  approval of Rust as the Administrator and of the allocation of **$65,000** to administration expenses.

8  **VII.**    **THE PROPOSED METHOD OF NOTICE IS APPROPRIATE**

9        The Class Notice must be the "best notice that is practicable under the circumstances." Fed.

10  R. Civ. P. 23(c)(2)(B). Notice is satisfactory "if it generally describes the terms of the settlement in

11  sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

12  heard." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). The

13  parties have agreed on procedures to provide class and collective members with written notice of

14  the Settlement similar to that approved and used in hundreds of class action settlements. Plaintiff

15  requests that the Court approve the Class Notice and procedures detailed in the Settlement

16  Agreement. (Yeremian Decl., ¶¶ 88-100; Exhibit 1, Settlement, and Exhibits A-B thereto for

17  California Class Notice and FLSA Collective Notice). The Notices reflects the Court's required

18  revisions. (Yeremian Decl., ¶¶ 19-29).

19  **VIII.**    **CONCLUSION**

20        Plaintiff, without opposition from Defendant, respectfully asks the Court to enter the

21  concurrently filed [Proposed] Order granting this renewed motion for preliminary approval to the

22  Settlement Agreement, confirming Class Counsel and Plaintiff as representatives as requested,

23  authorizing the mailing of the proposed Notices to the California Class and FLSA Collective

24  members, and scheduling a final fairness and approval hearing.

25  DATED:  August 30, 2019          DAVID YEREMIAN & ASSOCIATES, INC.

26                       By /S/ David Yeremian

27                        David Yeremian
                        Alvin B. Lindsay

28                          Attorneys for Plaintiff LUCIO SANCHEZ
                        and all others similarly situated