1
2
3
4
5

DAVID YEREMIAN & ASSOCIATES, INC.
David Yeremian (SBN 226337)
david@yeremianlaw.com
Alvin B. Lindsay (SBN 220236)
alvin@yeremianlaw.com
535 N. Brand Blvd., Suite 705
Glendale, California 91203
Telephone: (818) 230-8380
Facsimile: (818) 230-0308

6
7
8
9

DAVTYAN LAW FIRM
Emil Davtyan (SBN 299363)
Emil@davtyanlaw.com
880 E. Broadway
Glendale, California 91205
Telephone: (818) 875-2008
Facsimile: (818) 722-3974

Attorneys for Plaintiff LUCIO SANCHEZ and others similarly situated

10

11

## UNITED STATES DISTRICT COURT

12

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

13
14

LUCIO SANCHEZ, an individual, on behalf of himself and others similarly situated,

15

Plaintiff,

vs.

16
17
18

AM RETAIL GROUP, INC., a Delaware Corporation; and DOES 1 through 10, inclusive,

Defendants.

19
20
21
22
23
24
25
26

Case No.: 3:18-cv-00287-JCS

CLASS ACTION

Assigned For All Purposes To:
Hon. Joseph C. Spero, Courtroom G, 15th Floor

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

[*Filed concurrently with Supporting Declarations of David Yeremian, Alvin B. Lindsay, and Jennifer Mills, and [Proposed] Order and Judgment*]

*Final Approval Hearing scheduled for*:
Date:      May 29, 2020
Time:      9:30 a.m.
Location:  Courtroom G, 15th Floor

Original Complaint filed: December 15, 2017
First Amended Complaint: January 31, 2018
Second Amended Complaint:  April 30, 2018
Date of Removal: January 12, 2018

27

28

**TO THE COURT AND ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on **May 29, 2020**, at **9:30 a.m.** or as soon thereafter as counsel may be heard, in Courtroom G of this Court, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California 94102, before the Honorable Joseph C. Spero, Plaintiff LUCIO SANCHEZ ("Plaintiff"), on behalf of himself and the preliminarily approved Settlement Classes of similarly situated employees of Defendant AM RETAIL GROUP, INC. ("Defendant"), will and hereby does move this Court for final approval of the parties' Third Amended Joint Stipulation of Settlement of Class and Collective Action Claims ("Settlement" or "Settlement Agreement").

The parties' proposed Settlement Agreement reflecting all revisions required by the Court was provided at Exhibit A to the Supplemental Declaration of Alvin B. Lindsay in support of Plaintiff's supplemental memorandum in support of preliminary approval. (See ECF No. 56-2 for Settlement; ECF No. 56-3 for approved Class Notice and ECF No. 58-1 for approved FLSA Collective Notice). A copy of the Settlement is provided for the Court's reference at Exhibit A to the concurrently filed Declaration of Class Counsel, David Yeremian. Copies of the approved Notices are provided at Exhibits A and B to the concurrently filed Declaration of the Settlement Administrator. Defendant does not oppose the Motion or the requested awards pursuant to the parties' Settlement.

This motion follows the Court's Order granting preliminary approval to the Settlement, entered on **December 23, 2019**. (ECF No. 59). The Administrator mailed the Court approved Class Notice and FLSA Collective Notice to the California Settlement Class Members and FLSA Settlement Collective Members on **February 28, 2020**, and the notice period closed on **April 3, 2020**. On **February 28, 2020,** Plaintiff also filed his Unopposed Motion for Award of Attorneys' Fees, Costs, and Class Representative Service Award ("Fees and Costs Motion") (ECF No. 60), requesting that the Court award Class Counsel reasonable attorneys' fees totalling $433,333.33, which is one-third of the Total Settlement Amount of $1.3 million, reasonable litigation costs of up to $15,000.00 (with present costs estimated at $14,312.26), and awarding Plaintiff $10,000.00 as a Class Representative Enhancement and Service Award for his dedicated efforts on behalf of the California Class and FLSA Collective members.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION
OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

Plaintiff now moves for final approval of the parties' Settlement Agreement, to be heard concurrently with Plaintiff's Fees and Costs Motion. Defendant does not oppose the Motion or the Fees and Costs Motion, or the requested awards pursuant to the Settlement Agreement.

Plaintiff brings this Motion in accordance with the Court's Order granting preliminary approval to the Settlement Agreement (ECF No. 59) and dates set therein, and pursuant to the Court's authority to approve the Settlement upon finding that it is fair, reasonable, and adequate under Rule 23(e)(2) of the Federal Rules of Civil Procedure. The proposed settlement is fair, adequate, and reasonable and in the best interests of the Class as a whole. The procedures proposed by the parties have been adequate to ensure the opportunity of Class members to participate in, opt out of, or object to the Settlement, and it has been preliminarily approved. Settlement Administration has been completed successfully, and the Settlement provides reasonable compensation to the California Class and FLSA Collective members for their claims against Defendant.

Plaintiff requests entry of the concurrently provided [Proposed] Order and Judgment granting final approval of the Settlement Agreement and awarding the Settlement Administrator, Rust Consulting, Inc. ("Rust"), reasonable administration costs and fees of $65,000.00. The Administration has been summarized and addressed by the Administrator in the concurrently filed Declaration of Jennifer Mills of Rust in support of final approval, and in connection with the Fees and Costs Motion. (*See* ECF No. 60-9). Plaintiff further requests that the Court approve the requested attorneys' fees and costs and representative enhancement award, as addressed in the Fees and Costs Motion documents (ECF Nos. 60 through 60-13).

Plaintiff respectfully submits good cause exists for granting the Motion for the reasons set forth in the Settlement Agreement (ECF No. 56-2), herein, and in the concurrently filed documents, and those submitted with the Fees and Costs Motion. This Motion is based upon the Settlement Agreement this Notice of Motion and Unopposed Motion, the Memorandum of Points and Authorities, and the Declarations of David Yeremian (Class Counsel), Alvin B. Lindsay (Class Counsel), and Jennifer Mills (Settlement Administrator), along with the other documents filed herewith, including the Notice documents, any Exhibits to the Declarations, and the

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

1   [Proposed] Order and Judgment, the other pleadings and records on file in this action, including

2   the Fees and Costs Motion documents, and the presentations of counsel and such oral or

3   documentary evidence as may be presented at the hearing on this unopposed Motion.

4          In accordance with the Court's procedures and Civil L.R. 16-10(a), and in light of the

5   present measures the District and State have taken in response to the COVID-19 Public Health

6   Emergency, Plaintiff's counsel and counsel for Defendant respectfully request that they be

7   permitted to appear telephonically at the hearing on Plaintiff's Motion for Final Approval of the

8   Settlement Agreement and Fees and Costs Motion on May 29, 2020.

9

10  DATED:  April 24, 2020                    DAVID YEREMIAN & ASSOCIATES, INC.

11                                            By /S/ Alvin B. Lindsay
                                                 David Yeremian
12                                               Alvin B. Lindsay
                                                 Attorneys for Plaintiff LUCIO SANCHEZ
13                                               and the Settlement Class and Collective
                                                 Members
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION
OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................... 1

II.    STATEMENT OF RELEVANT BACKGROUND FACTS ...................................... 4

  A.   Procedural History and Settlement Approval Proceedings .............................. 4

  B.   Investigation and Mediations ......................................................................... 5

  C.   The Settlement, Its Reasonableness, and Class Response and Administration ................. 6

III.   LEGAL AUTHORITY FOR FINAL APPROVAL................................................. 8

  A.   The Standard of Review ................................................................................. 8

  B.   Relevant Ninth Circuit Considerations Favor Settlement Approval ................. 9

       1.   Strength of Plaintiff's Case ................................................................. 10

       2.   The Amount Offered in Settlement...................................................... 12

       3.   Risk, Expense, Complexity, and Likely Duration of Litigation ................ 14

       4.   Risk of Maintaining a Class Action through Trial and Appeal ................ 14

       5.   Extent of Discovery Completed and Stage of the Proceedings ................ 16

       6.   Experience and Views of Counsel ....................................................... 17

       7.   Presence of a Governmental Participant ............................................... 18

       8.   Reaction of the Settlement Class Members to the Settlement ................ 18

       9.   Settlement Procedure ......................................................................... 19

  C.   Approval of Attorneys' Fees, Costs, Representative Enhancement................... 19

  D.   Final Certification for Settlement Purposes Is Appropriate ............................ 22

  E.   Settlement Administration Costs Should Be Approved ................................... 23

IV.    CONCLUSION ..................................................................................................... 24

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION
OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

1

# **TABLE OF AUTHORITIES**

2

**Cases**

3    *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) ..................................................... 15

4    *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ...................................... 13, 17

5    *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209 (S.D.N.Y. 1992) ...................................... 17

6    *Churchill Vill., LLC v. Seattle,* 361 F.3d 566 (9th Cir. 2004) ......................................... 10

7    *Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268 (9th Cir. 1992) .............................. 3, 8

8    *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) ............................................ 15

9    *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................................ 8

10   *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ........................................ 9, 18

11   *Fecht v. Northern Telecom Ltd.*, 116 F. Supp. 2d 446 (S.D.N.Y. 2000) ............................ 15

12   *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482 (E.D. Pa. 1985) ................ 17-18

13   *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ...................................... 8

14   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................ 9, 10

15   *Hervey v. City of Little Rock*, 787 F.2d 1223 (8th Cir. 1986) ........................................... 15

16   *In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991).......... 15

17   *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976). ............................................... 18

18   *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ......................................... 9

19   *In re Omnivision Tech., Inc.,* 2008 WL 123936 (N.D. Cal. 2008) .............................................. 13

20   *In re PaineWebber Ltd. Pships. Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997).......................................... 18

21   *In re Patriot Am. Hospitality, Inc. Sec. Litig,* 2005 U.S. Dist. LEXIS 40995 (N.D. Cal. 2005) .... 19

22   *In re Veritas Software Corp.*, 2005 U.S. Dist. LEXIS 30880 (N.D. Cal. Nov. 15, 2005) ............. 14

23   *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y 1985)........................ 16-18

24   *Lewis v. Newman*, 59 F.R.D. 525 (S.D.N.Y. 1973) ........................................................ 10

25   *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)...................................... 8, 10

26   *Nelson v. Bennett*, 662 F. Supp. 1324 (E.D. Cal. 1987)............................................... 10-11

27   *Officers For Justice v. Civil Serv. Comm.*, 688 F.2d 615 (9th Cir. 1982)........................................ 9

28   *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999).............................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 7973 (1985) .......................................................... 8

*Robbins v. Koger Props, Inc.*, 116 F.3d 1441 (11th Cir. 1997) ................................................ 15

*Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943 (9th Cir. 1976) ............................................... 3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................................. 3, 15-16

*West Virginia Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ................................... 12

**Statutes**

Business & Professions Code § 17200 *et seq.* .......................................................................... 4

Labor Code § 203 ........................................................................................................................ 4

Labor Code § 226(a) .................................................................................................................... 4

Labor Code § 226.7 ..................................................................................................................... 4

Labor Code § 510 ........................................................................................................................ 4

Labor Code § 2699, *et seq.* .................................................................................................... 4, 18

Labor Code § 2802 ...................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... 1, 8-11, 13, 22

**Treatises**

4 Newberg on Class Action 4th (4th ed. 2002) .......................................................................... 3

Manual for Complex Litigation (Second) § 30.44 (1985) ........................................................ 19

Newberg & Conte, *Newberg On Class Actions* § 11.41 (3d ed. 1992) ...................................... 9

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION
OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff LUCIO SANCHEZ ("Plaintiff"), on behalf of himself and the preliminarily approved Settlement Classes of similarly situated employees of Defendant AM RETAIL GROUP, INC. ("Defendant") (together, the "parties"), respectfully requests entry of an Order granting final approval of the parties' Third Amended Joint Stipulation of Settlement of Class and Collective Action Claims ("Settlement" or "Settlement Agreement"). Pursuant to the Settlement, Defendant does not oppose this Motion or the requested awards. (*See* concurrently filed Declaration of David Yeremian in support of Motion for Final Approval ("Yeremian Decl."), ¶¶ 4, 8; *see also* Declaration of David Yeremian in support of Fees and Costs Motion (ECF No. 60-1) ("Yeremian Fees Decl."),  ¶¶ 3, 121, 145). A Settlement Agreement as preliminarily approved is provided for the Court's review and convenience at Yeremian Decl., Exhibit A. (*See also* ECF No. 56-2).

The parties have agreed to a Total Settlement Amount of **$1.3 million** for the California Class Members and FLSA Collective Members in connection with this non-reversionary Settlement. (*See* Declaration of Jennifer Mills (Settlement Administrator) in support of Final Approval ("Mills Decl."), ¶¶ 7-8, 15-17). On **December 23, 2019**, the Court entered its Order granting preliminary approval to the Settlement and authorizing mailing of the proposed Notices, and setting further administration and approval dates. (ECF No. 59). On **February 18, 2020**, the Administrator (Rust Consulting, Inc.) mailed the California Class Notice to 2,881 California Class Members and the FLSA Collective Notice to 3,370 FLSA Collective Members. (Mills Decl., ¶ 7). A copy of the California Class Notice and the FLSA Collective Notice, as mailed, are respectfully provided at Exhibits A and B to the Mills Declaration. (*See also* ECF Nos. 56-3, 58-1).

On **February 28, 2020,** Plaintiff filed his Unopposed Motion for Award of Attorneys' Fees, Costs, and Class Representative Service Award ("Fees and Costs Motion") (ECF No. 60), requesting that the Court award Class Counsel reasonable attorneys' fees ($433,333.33) and litigation costs ($15,000), and award Plaintiff a Class Representative Enhancement and Service Award ($10,000). The Settlement Agreement and its terms are addressed and summarized in detail by Class Counsel in connection with Plaintiff's Fees and Costs Motion. (Yeremian Decl., ¶¶ 13,

1   32-45; *see also* ECF 60-1, Yeremian Fees Decl., ¶¶ 70-109; *see also* ECF No. 52-1, ¶¶ 65-103).

2   Pursuant to the Procedural Guidelines for this Court, information and items addressed in detail in

3   the prior documents will be so referenced in this motion.

4          Following the close of the objection and exclusion period on **April 3, 2020**, Plaintiff now

5   seeks final approval of the Settlement and an award to Rust Consulting, Inc. of $65,000.00 for the

6   Settlement Administration costs and fees it has incurred to date. (Mills Decl., ¶¶ 7, 23). Without

7   opposition from Defendant, Plaintiff now respectfully asks the Court to grant final approval of the

8   Settlement (Yeremian Decl., Exhibit A), award the requested fees, costs, and Class Representative

9   Enhancement and Service Award, and order payments to the Class and Collective Members

10  pursuant to the Settlement. As explained in further detail below and in the supporting

11  Declarations, the Court should grant final approval because:

12  - The Settlement is fair, reasonable, and adequate, and has been preliminarily approved.

13  - Plaintiff and Class Counsel have negotiated a Total Settlement Amount of **$1.3 million** for

14      2,881 California Class Members and 3,370 FLSA Collective Members in connection with

15      this non-reversionary Settlement. (Mills Decl., ¶¶ 6-7, 15).

16  - <u>Zero Exclusions</u>: There were no requests for exclusion submitted to opt-out of the

17      Settlement by any of the California Class Members or FLSA Settlement Collective

18      Members, resulting in a 100% participation rate. (Mills Decl., ¶ 13).

19  - <u>Zero Objectors</u>: None of the California Class Members or FLSA Settlement Collective

20      Members submitted an objection to the Settlement. (Mills Decl., ¶ 14).

21  - The Net Distribution Fund remaining following approval of the requested awards is

22      estimated to be $752,916.67, and will be paid in its entirety to the California Class and

23      FLSA Collective members, with 85% being allocated to the Net California Distribution

24      Fund and 15% being allocated to the Net FLSA Distribution Fund. (Mills Decl., ¶ 15).

25  - The Net California Distribution Fund allotted for the 2,881 California Class Members is

26      $646,229.82. The average Individual Settlement Payment for the California Settlement

27      Class Members is estimated at $224.31, the lowest Individual Settlement Payment is

28

estimated at $1.14, and the highest Individual Settlement Payment is estimated at $1,417.06. (Mills Decl., ¶ 16).

- The Net FLSA Distribution Fund allotted for the 3,370 FLSA Collective Members is $112,941.73. The average Individual Settlement Payment for the FLSA Collective Members is estimated at $33.51, the lowest Individual Settlement Payment is estimated at $11.13, and the highest Individual Settlement Payment is estimated at $467.42. (Mills Decl., ¶ 17).

- The total Net Distribution Fund to be paid to the California Class Members and FLSA Collective Members is **12.66%** of the potential liability exposure Plaintiff estimated Defendant faced on the majority of the claims. (ECF No. 60, page 6; ECF No. 60-1, Yeremian Fees Decl., ¶ 59).

These numbers are within the range of similar settlements for which final approval was granted. By resolving this matter now, these Class and Collective Members will receive guaranteed recovery without risk of nonpayment, delay, or an adverse judgment at trial. The Settlement should receive final approval because it is fair, reasonable and adequate, as it appropriately accounts for the risks, challenges, and costs to both sides were the case to proceed.

The Settlement factors in the risk that certification and certain defenses may succeed or fail in light of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). It sets a settlement amount that reflects a compromise between two strongly held positions. The Settlement also accounts for the exchange of substantial information in discovery for two mediations. Also supporting approval is the recognition in the law favoring settlement in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See* 4 Newberg on Class Action 4th (4th ed. 2002); *Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943, 950 (9th Cir. 1976). For these and other reasons set forth below, and in connection with the Fees and Costs Motion, Plaintiff respectfully requests that the Court grant final approval of the parties' Settlement.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

1    **II.**    **STATEMENT OF RELEVANT BACKGROUND FACTS**

2        **A.** **Procedural History and Settlement Approval Proceedings**

3        Plaintiff and the California Class Members and the FLSA Collective Members worked as

4    hourly, non-exempt retail store employees at Defendant's store locations during the relevant period

5    of **December 15, 2013** through **January 31, 2019**. (Yeremian Decl., ¶ 9). Plaintiff's Complaint,

6    filed on **December 15, 2017** in Alameda County Superior Court, alleged nine causes of action

7    against Defendant for: (1) failure to pay minimum wages; (2) failure to pay wages and overtime

8    under Labor Code § 510; (3) failure to pay wages under the FLSA, 29 USC §§ 201, 206, 207 *et*

9    *seq.*; (4) meal period liability under Labor Code § 226.7; (5) rest-break liability under Labor Code §

10   226.7; (6) violation of Labor Code § 226(a) for inaccurate wage statements; (7) Violation of Labor

11   Code § 221; (8) waiting time penalties for violation of Labor Code § 203; and 9) violation of

12   Business & Professions Code § 17200 *et seq.* (Yeremian Decl., ¶ 12). The Complaint followed

13   Plaintiff's PAGA Notice Letter submitted to the LWDA on **November 10, 2017**. (*Id.* at ¶ 10).

14       Defendant removed this action to this honorable Court on **January 12, 2018** (ECF No. 1).

15   Plaintiff filed a First Amended Complaint to add the tenth claim for PAGA penalties pursuant to

16   California Labor Code § 2699, *et seq.* ("PAGA") on **January 31, 2018**. (Yeremian Decl., ¶ 11).

17   Following initial discovery and conference of counsel, on **April 30, 2018**, Plaintiff filed a Second

18   Amended Complaint adding a cause of action for failure to reimburse business expenses under

19   Labor Code § 2802 and further articulating the wage claims. (*Id.*).

20       The parties completed their initial disclosures and conducted their Initial Case Management

21   Conference on **April 27, 2018**, and on **May 11, 2018**, the Court issued its Case Management and

22   Pretrial Order setting case management dates through class certification. (Yeremian Decl., ¶ 12).

23   The parties informed the Court of their scheduled their first mediation with Steve Rottman, Esq. on

24   **August 17, 2018**. (*Id.*). After a second mediation, the parties agreed to the original Settlement

25   Agreement, which was eventually amended to its present Third Amended form following three

26   further hearings and supplemental briefings and submissions required by the Court. (*Id.*).

27       Class Counsel provided a detailed summary of the parties and all the further procedural

28   events and the actions counsel have taken in this action for the Court's review and reference as

desired in connection with the Fees and Costs Motion. (Yeremian Decl., ¶ 13; citing ECF No. 60-1, Yeremian Fees Decl., ¶¶ 11-34). Class Counsel has also provided a detailed summary of the Settlement Agreement and its terms in connection with the Fees and Costs Motion and the second renewed motion for preliminary approval. (Yeremian Decl., ¶¶ 13, 32-45; ECF 60-1, Yeremian Fees Decl., ¶¶ 70-109; *see also* ECF No. 52-1, ¶¶ 65-103). Counsel further summarized the liability exposure calculation methodologies utilized and detailed how the parties added and allocated and reduced Settlement value and the bases for doing so. (Yeremian Decl., ¶ 13; ECF No. 60-1, Yeremian Fees and Costs Decl., ¶¶ 47-69; *see also* ECF No. 52-1, ¶¶ 42-64).

The Court granted preliminary approval to the Settlement Agreement on **December 23, 2019**, and entered an Order to that end authorizing mailing of the proposed California Class Notice and FLSA Collective Notice and setting further administration and approval dates (ECF No. 59), including motion filing deadlines and setting the final approval hearing for **May 29, 2020.**

Counsel for the parties provided the Settlement Administrator, Rust Consulting, with the approval documents and class and collective lists and data, and the Administrator completed mailing of the California Class Notice and the FLSA Collective Action Notice on **February 18, 2020**. (Yeremian Decl., ¶¶ 14-15; Mills Decl., ¶¶ 7-11). Administration has progressed without incident, and the deadline for Class Members to exclude themselves from the Settlement or for them and the FLSA Collective Members to object to the Settlement was **April 3, 2020**. (*Id.*).

### B.  Investigation and Mediations

Plaintiff's Complaints have been based on substantial pre-filing research, both factual and legal. Prior to filing suit, Class Counsel interviewed Plaintiff at length regarding his claims and those of the putative Class. Class Counsel's initial investigation painted a picture of the conditions under which Plaintiff and his fellow co-workers worked. Counsel also completed informal and formal discovery and were in possession of the documents and data necessary for estimating liability exposure at the mediation. (Yeremian Decl., ¶ 16). Class Counsel has provided a detailed summary of the comprehensive discovery and investigation the parties and mediator relied upon. (*Id.*; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 35-49; *see also* ECF 52-1, ¶¶ 30-41).

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

Finding that their respective interests are best served by compromise, the parties agreed to mediate after conducting the above described discovery and investigation, and did so on **August 17, 2018** and **December 18, 2018** with well-respected wage and hour mediator, Steve Rottman, Esq. in Los Angeles, California. After two full days of substantial negotiations, the parties were able to arrive at the general terms governing their agreed upon Settlement of all of Plaintiff's class and collective claims in the Action. The parties entered into a Memorandum of Understanding, then filed a Notice of Settlement and focused on finalizing their Settlement Agreement and completing the preliminary approval hearings and supplemental related filings. (Yeremian Decl., ¶ 17). At all times, the parties' settlement negotiations have been non-collusive, adversarial, and at arm's length, while recognizing the uncertainty, risk, expense, and delay attendant to continuing the action through trial and any appeals. (*Id.* at ¶¶ 18-19; *see also* detailed discussion at ECF No. 60-1, Yeremian Fees Decl., ¶¶ 48, 61, 69, 112-118, 128, 139-140, 146, 147, 151, 153-158).

### C.    The Settlement, Its Reasonableness, and Class Response and Administration

The details and terms of the Settlement terms are addressed and summarized by Class counsel. (Yeremian Decl., ¶¶ 20, 32-45; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 70-109). Class Counsel also provides further details as to how the parties estimated potential liability exposure and allocated Settlement value for each of the Class and Collective and PAGA claims, and the bases for doing so. (Yeremian Decl., ¶¶ 28-31; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 47-69). To summarize, the total potential liability exposure Defendant faced as to the California Class Members on Plaintiff's main claims for unpaid wages, failure to provide meal and rest periods, and failure to reimburse business expenses was $5,875,724.79. The Total Settlement Amount is $1,300,000, and the Net California Settlement Fund after approved deductions, and which is 85% of the Net Distribution Fund, is estimated at $646,229.17. Therefore, the total settlement funds available to pay claims to Participating California Settlement Class Members represents approximately **11%** of the total estimated potential liability for Plaintiff's main claims. (Yeremian Decl., ¶¶ 21, 28; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 47-59).

Additionally, the Net FLSA Settlement Fund after approved deductions, and which is **15%** of the Net Distribution Fund, is estimated at **$112,937.50**. Therefore, the total settlement funds

available to pay claims to FLSA Settlement Collective Members represents approximately **161%** of the total estimated potential liability of **$70,000.00** for Plaintiff's claims for unpaid overtime due to an alleged incorrect regular rate calculation. (Yeremian Decl., ¶¶ 22, 29-30; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 63-68). The Net Distribution Fund, if all requested allocations from the Total Settlement Amount are approved, totals approximately **$752,916.67**. The total estimated liability exposure Class Counsel calculated for the main California Class Claims equals approximately **$5,875,724.79** plus **$70,000.00** for the FLSA Collective Claims, equaling approximately **$5,945,724.79**. Therefore, the total Net Distribution Fund to be paid to the California Class Members and FLSA Collective Members is **12.66%** of the potential liability exposure Defendant faced on the majority of Plaintiff's claims. (Yeremian Decl., ¶ 22, 31; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 47-69). Plaintiff and class counsel submit this number is fair and reasonable in light of the risk of no recovery following protracted litigation, Defendant's policies and record of compliance, and for all the reasons addressed above and in the following sections and supporting documents. The Court has preliminarily approved the Settlement after reviewing Plaintiff's methodology and potential estimated liability calculations. (ECF No. 59).

The Settlement Administrator has provided a Declaration in support of the present Motion addressing the procedures followed for compiling the Class List and sending the Notices to the members of the Class and Collective, and the results following the close of the notice period on **April 3, 2020**. (*See* Mills Decl., ¶ 5-17). The administrator sent notices to **2,881** California Class Members and **3,370** FLSA Collective Members on **February 18, 2020**. (*Id.* at ¶ 7). After skip-tracing and re-mailings, 187 Notices remain undeliverable, 47 of which are FLSA Collective Notices and 140 of which are California Class Notices. (*Id.* at ¶ 9). There was one potential self-identifying FLSA Collective Member, but the parties and Administrator have concluded the employee is not a Collective Member. (*Id.* at ¶ 12). There were no requests for exclusion submitted to opt-out of the Settlement by any of the California Class Members, resulting in a 100% participation rate. (Mills Decl., ¶ 13). Also, none of the California Class Members or FLSA Settlement Collective Members submitted an objection to the Settlement. (*Id.* at ¶ 14).

The Net Distribution Fund remaining following approval of the requested awards is estimated to be $752,916.67. (Mills Decl., ¶ 15). The Net California Distribution Fund allotted for the 2,881 California Class Members is $646,229.82. The average Individual Settlement Payment for the California Settlement Class Members is estimated at $224.31, the lowest Individual Settlement Payment is estimated at $1.14, and the highest Individual Settlement Payment is estimated at $1,417.06. (Mills Decl., ¶ 16). The Net FLSA Distribution Fund allotted for the 3,370 FLSA Collective Members is $112,941.73. The average Individual Settlement Payment for the FLSA Collective Members is estimated at $33.51, the lowest Individual Settlement Payment is estimated at $11.13, and the highest Individual Settlement Payment is estimated at $467.42. (Mills Decl., ¶ 17; *see also* Yeremian Decl., ¶¶ 23-24).

Plaintiff submits the notice and claims process has been successful and complied with constitutional due process. *See, Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) (holding that "a fully descriptive notice [that] is sent [by] first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process"); *Grunin v. International House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (holding that "individualized notice by mail to the last known address [is] the 'best notice practicable' in a class action contest"), *cert. denied*, 423 U.S. 864 (1975), *citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77 (1974).

## III.   LEGAL AUTHORITY FOR FINAL APPROVAL

### A.   The Standard of Review

Under Rule 23(e) of the Federal Rules of Civil Procedure, "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class . . ." In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), *cert. denied*, 506 U.S. 953 (1992). Therefore, in making its assessment pursuant to Rule 23(e), the Court's evaluation of what is otherwise "a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to

8

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

1  reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

2  collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

3  reasonable, and adequate to all concerned." *Officers For Justice v. Civil Serv. Comm.*, 688 F.2d

4  615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); *In re Mego Fin. Corp. Sec. Litig.*,

5  213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

6       A settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor

7  should the proposed settlement "be judged against a hypothetical or speculative measure of what

8  might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. To the

9  contrary, the involvement of experienced class action counsel and the fact that the settlement

10  agreement was reached in arms' length negotiations, after relevant discovery had taken place,

11  create a presumption that the agreement is fair. *See, Ellis v. Naval Air Rework Facility*, 87 F.R.D.

12  15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

13       As explained above, the settlement was reached through informed negotiation by

14  experienced counsel on both sides, and after extensive investigation, informal discovery,

15  amendment of the complaint, mediations with an experienced and respected wage and hour

16  mediator, and conferences regarding exact terms and conditions of the settlement and notice. (*See*

17  Yeremian Decl., ¶¶ 17-20, 25-28). The mediator's efforts in the mediations also ensured the

18  interests of the Class Members were adequately protected. Under these circumstances, the

19  settlement should be afforded a presumption of fairness.

20       **B.     Relevant Ninth Circuit Considerations Favor Settlement Approval**

21       A court can approve a class action settlement that binds class members "only after a

22  hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A

23  presumption of fairness exists where: (1) the settlement is reached through arms-length bargaining;

24  (2) investigation and discovery are sufficient to allow counsel and the Court to act intelligently; (3)

25  counsel is experienced in similar litigation; and (4) the percentage of objections is small.  Newberg

26  & Conte, *Newberg On Class Actions* (3d ed. 1992), § 11.41, pp. 11-91.

27       The Ninth Circuit has explained that courts should consider "some or all" of the following

28  factors in determining whether a proposed settlement is fair, reasonable, and adequate: (1) the

strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village v. General Electric*, 361 F.3d 566, 575-576 (9th Cir. 2004), *cert. denied*, 543 U.S. 818 (2004), citing *Hanlon*, 150 F.3d at 1026; *see also Linney*, 151 F.3d at 1242. One factor alone may prove determinative. *Id.* Ultimately, "[s]trong judicial policy favors settlements." *Churchill Vill., LLC v. Seattle,* 361 F.3d 566, 576 (9th Cir. 2004) (omission and quotation marks omitted) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d at 576).

The relevant *Churchill* factors weigh in favor of final approval. Here, the risk, expense, complexity, and likely duration of further litigation, as well as the risk of maintaining class action status throughout the trial, were high. Defendant would have contested class certification by arguing that individualized issues predominate and by contesting typicality and manageability. (Yeremian Decl., ¶¶ 25- 26, 61-64; Exhibit A, Settlement Agreement, ¶ 12.7, 12.8; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 48, 61, 69, 92, 112-118, 128, 139-140, 144-147, 151, 153-158; *see also* ECF No. 52-1, Yeremian Prelim App. Decl., ¶¶ 43, 64, 106-112, 117, 120, 134, 137). The parties have disputed the strength of Plaintiff's claims and the substantial risk of not attaining class certification under Rule 23. (Yeremian Decl., ¶¶ 25-27; *see also* Exhibit A, Settlement, ¶¶ 9.2, 11.2, 12.7-12.8; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 45-46, 50-54, 63-68, 92).

### 1.    Strength of Plaintiff's Case

In evaluating a settlement in this type of complex litigation, courts have long recognized that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (footnote omitted.). Thus, compromise is particularly appropriate. *Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987). The strengths and risks associated with Plaintiff's claims, Plaintiff's arguments as to how to value the claims, and Defendant's arguments against specific claims have also been summarized by Class Counsel in connection with addressing the value assigned to the claims. (Yeremian Decl., ¶ 25; ECF 60-1, Yeremian Fees Decl., ¶¶ 47-65).

1     To succeed at trial, Plaintiff would have to prevail on each and every element of his claims.

2  There are significant legal uncertainties associated with unlawful policy claims and claims for

3  unpaid overtime or off the clock work or break violations. For example, Defendant produced all

4  relevant policies, and Plaintiff faced the prospect of proving an unlawful practice of alleged failure

5  to pay employees all wages for all hours worked. Defendant asserted there is no written record of

6  off the clock work, and thus no way to determine how much time was allegedly not separately

7  compensated. Defendant also argued its compensation system accounted for all hours worked and

8  did not require employees to attend to the sales floor during breaks, despite the language of its

9  written policy. (Yeremian Decl., ¶ 26; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 50-54). Defendant

10  asserted that, although its policies were consistent across all AMRG store locations, they were

11  facially compliant, especially following the prior litigation and settlement in the *Ruch* action. (*Id*. at

12  ¶¶ 45-46, 50-54). Also, for the FLSA Collective Members, the actual amount of unpaid overtime

13  was relatively minimal, as evidenced by the data Defendant provided. (*Id*. at ¶¶ 63-68, 92).

14     The uncertainty on the legal issues at the core of the claims and defenses further underscores

15  the reasonableness of the proposed Settlement in the face of palpable risk. Defendant therefore

16  argued that individualized issues predominated raising individual inquiries that precluded Rule 23

17  certification and rendered any proposed class or collective trial unmanageable. Differing opinions

18  on liability presented further risk that Plaintiff and the Class and Collective might recover nothing

19  on their claims, or they would be greatly narrowed through unnecessary contested discovery motion

20  practice. (Yeremian Decl., ¶¶ 27, 61-64). In light of Defendant's advocated defenses, the difficulties

21  in proving off-the-clock work and the amount of unpaid overtime and liability for meal and rest

22  periods, the number of class members, the uncertainty of certifying claims, and the manageability

23  issues potentially presented across multiple store locations and brands, and the prior *Ruch*

24  settlement, this Settlement is within the range of reasonableness for approval. (*Id*.; *see also* ECF

25  No. 60-1, Yeremian Fees Decl., ¶¶ 43, 47-65, 69, 92, 105, 114, 118, 139, 144, 149, 152).

26     While Plaintiff believes he has arguments and evidence to counter each one of Defendant's

27  positions, there is no guarantee that the Court or jury would agree. *See West Virginia Chas. Pfizer*

28  *& Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("it is known from past experience that no

11

1    matter how confident one may be of the outcome of litigation, such confidence is often

2    misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir.), cert. denied, 404 U.S. 871 (1971).

3                    **2.**        **The Amount Offered in Settlement**

4           As Class Counsel has detailed, the Total Settlement Amount of $1.3 million is reasonable

5    and has been preliminarily approved as such by the Court based on the potential liability exposure

6    calculations and reasonable and realistic deductions. To summarize, the total potential liability

7    exposure Defendant faced as to the California Class Members on Plaintiff's main claims for unpaid

8    wages, failure to provide meal and rest periods, and failure to reimburse business expenses is

9    therefore **$5,875,724.79**. With the Net California Settlement Fund estimated at **$646,229.17**, the

10   settlement funds available to pay claims to the California Settlement Class Members represents

11   approximately **11%** of the total estimated potential liability calculated for Plaintiff's main claims.

12   (Yeremian Decl., ¶ 28; ECF No. 60-1; Yeremian Fees Decl., ¶¶ 47-59).

13          For the FLSA Claims and from Defendant's records, Plaintiff estimated **$27,144.91** in total

14   unpaid overtime over **8,635** pay periods and Plaintiff concluded the total potential exposure with

15   liquidated damages under the FLSA and interest would be approximately $70,000.00. Therefore,

16   the Net FLSA Settlement Fund of $112,937.50 to be paid in its entirety to the FLSA Settlement

17   Collective Members represents approximately **161%** of the total estimated potential liability for

18   Plaintiff's claims for unpaid overtime due to an incorrect regular rate calculation. (Yeremian Decl.,

19   ¶¶ 29-30; ECF No. 60-1; Yeremian Fees Decl., ¶¶ 47-59).

20          Based on a total estimated liability exposure for the Class and FLSA claims of

21   **$5,945,724.79**, the total Net Distribution Fund of approximately **$752,916.67** to be paid to the

22   California Class Members and FLSA Collective Members is **12.66%** of the potential liability

23   exposure Plaintiff estimated Defendant faced for these claims. (Yeremian Decl., ¶ 31; ECF No. 60,

24   page 6; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 63-68).

25          Plaintiff and Class Counsel have negotiated a Total Settlement Amount of **$1.3 million** for

26   2,881 California Class Members and 3,370 FLSA Collective Members in connection with this non-

27   reversionary Settlement. (Mills Decl., ¶¶ 6-7, 15). There were no requests for exclusion, and there

28   were no objectors. (Mills Decl., ¶¶ 13-14). The Net Distribution Fund remaining following approval

of the requested awards is estimated to be **$752,916.67**. (Mills Decl., ¶ 15). The Net California Distribution Fund allotted for the 2,881 California Class Members is **$646,229.82**. The average Individual Settlement Payment for the California Settlement Class Members is estimated at **$224.31**, the lowest Individual Settlement Payment is estimated at $1.14, and the highest Individual Settlement Payment is estimated at $**1,417.06**. (Mills Decl., ¶ 16). The Net FLSA Distribution Fund allotted for the 3,370 FLSA Collective Members is **$112,941.73**. The average Individual Settlement Payment for the FLSA Collective Members is estimated at **$33.51**, the lowest Individual Settlement Payment is estimated at $11.13, and the highest Individual Settlement Payment is estimated at **$467.42**. (Mills Decl., ¶ 17). These are substantial and real recoveries that are well-within the range of an acceptable Settlement worthy of preliminary approval under Rule 23.

Based on the numerous risks and unresolved questions of law associated with continuing to litigate this case, including the present challenges presented by the pandemic and Court closures all litigants must face, it is in the best interests of the Settlement Classes to receive a certain and substantial award. Courts in the Ninth Circuit have observed: "simply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *see e.g.*, *In re Omnivision Tech., Inc.,* 2008 WL 123936 (N.D. Cal. 2008) ($13.75 million settlement approved despite over $151.8 million estimate of damages through trial). The settlement here is significantly more than a "fraction" and in fact provides a reasonable recovery when considering the associated risk factors involved.

Plaintiff submits the Settlement value of **$1.3 million**, in light of the above numbers, is fair and reasonable given the risk of no recovery following protracted litigation, Defendant's policies and record of compliance following prior litigations, and for all the reasons addressed in this Motion and the prior Preliminary Approval and Fees and Costs Motions and supporting documents.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

1        **3.        Risk, Expense, Complexity, and Likely Duration of Litigation**

2        If there was no settlement and Plaintiff proceeded through Class certification, expert

3    discovery and trial preparation would be expensive and complex. While certainly attainable from

4    Plaintiff's perspective, victory in such a complex trial is hardly assured. Even if Plaintiff prevailed

5    in establishing liability, which Defendant would vigorously contest on many grounds, additional

6    risks would remain in establishing the amount of damages sustained by the class. *See In re Veritas*

7    *Software Corp. Sec. Litig.* 2005 U.S. Dist. LEXIS 30880 at *14-15 (N.D. Cal. Nov. 15, 2005)

8    (challenges in proving damages and other litigation risks supported approval of settlement). While

9    Defendant has agreed to settle the action, if this case were to proceed, Defendant would continue to

10   assert defenses against liability and as to class certification. Therefore, while Plaintiff believes the

11   claims are meritorious and the Class would be able to establish liability, Plaintiff recognizes the

12   uncertainties of trial and the risks inherent in establishing liability in a complex case of this nature.

13       By approving the Settlement, the Court can guarantee recovery for each of the California

14   Class and FLSA Collective Members without further risk of trial and a possible appeal. If this case

15   were to proceed to trial, the parties would have to expend thousands of additional hours in attorney

16   time, and spend much more in costs. Expenses incurred for a trial would severely deplete any

17   eventual recovery. Further, post-trial motions and appeals could force class members to wait many

18   more years for any recovery, further reducing its value. Consequently, resolution of this case before

19   trial will substantially and meaningfully benefit the Settlement Class, while reasonably accounting

20   for the risks associated with a protracted litigation.

21       Consistent with the foregoing, it would be grossly inefficient for the Class of current and

22   former employees to bring individual actions to recover from Defendant for its alleged labor law

23   violations. Moreover, the potential recovery to each individual is likely not high enough to provide

24   them with the incentive to sue individually. By granting final approval of the Settlement, the Court

25   can eliminate all risks and provide Class and Collective members with a certain recovery.

26       **4.        Risk of Maintaining a Class Action through Trial and Appeal**

27       Maintaining a class action is an expensive and risky enterprise. In addition to the thousands

28   of hours of time and money spent, with no hope of remuneration until and unless there is either a

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION
OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

1    settlement or a judgment, there is also the ever-present possibility that any victory attained by a

2    plaintiff can be overturned. *See, e.g., Fecht v. Northern Telecom Ltd. (In re Northern Telecom Ltd.*

3    *Sec. Litig.)*, 116 F. Supp. 2d 446 (S.D.N.Y. 2000) (summary judgment granted after seven years of

4    litigation); *Robbins v. Koger Props, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81

5    million for plaintiffs against an accounting firm reversed on appeal on loss causation ground and

6    judgment entered for defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997)

7    (affirming the lower court's granting of summary judgment in favor of defendants); *In re Apple*

8    *Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (class won jury

9    verdict against two individual defendants, but district court vacated judgment on motion for

10   judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)

11   (where the class won a substantial jury verdict and a motion for judgment notwithstanding the

12   verdict was denied; however, on appeal, the judgment was reversed and the case dismissed – after

13   11 years of litigation).

14          Although the Class and Collective have been conditionally certified settlement purposes,

15   there is no assurance they would continue to remain certified. "A district court has a duty to

16   assure that a class once certified continues to be certifiable under Fed. R. Civ. P. 23(a)." *Petrovic*

17   *v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999), citing *Hervey v. City of Little Rock*, 787

18   F.2d 1223, 1227 (8th Cir. 1986). Should this Court not finally approve the Settlement, Plaintiff

19   would need to prevail upon his motion for class certification, which Defendant would vigorously

20   oppose. Additionally, the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

21   2541 (2011) substantially undermines Plaintiff's ability to certify a class action. Plaintiff must

22   affirmatively demonstrate both that common questions of law and fact exist and that the

23   methodology utilized for showing harm on a class-wide basis actually works, and Class Counsel

24   has addressed the risks it faced. (Yeremian Decl., ¶¶ 25-27, 61-64, Exhibit A, Settlement

25   Agreement, ¶ 12.7, 12.8; ECF No. 60-1; Yeremian Fees Decl., ¶¶ 47-69, 92, 112-118, 128, 139-

26   140, 144-147, 151, 153-158; *see also* ECF No. 52-1, Yeremian Prelim App. Decl., ¶¶ 43, 64,

27   106-112, 117, 120, 134, 137). Defendant would have also likely argued *Dukes* forecloses "trials

28   by formula." Federal courts have cited *Dukes* to deny class certification and to decertify cases.

As addressed above and in prior submissions, the parties strongly contested the relative risks in this case, and adjusted them based on several factors, including recent case law, likelihood of success at certification, likelihood of success on the merits, and varying assumptions of alleged non-compliance with California law and the FLSA. (Yeremian Decl., ¶¶ 17-27; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 40, 47-65, 113-123). Given the constantly shifting legal landscape of class action litigation, there is also a significant chance that any order or judgment in favor Plaintiff could be overturned on appeal, or certified claims could be decertified. (Yeremian Decl., ¶ 18; Exhibit A, Settlement, ¶¶ 12.7, 12.8, 9.2, 11.2; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 48, 111-112, 115). These were substantial risks, any of which could have resulted in the class/collective members receiving nothing if the claims were further litigated, or resulting in protracted and contested litigation and likely appeals to the Ninth Circuit. (*Id. see also* discussion of risks of continued litigation at ECF No. 60-1, Yeremian Fees Decl., ¶¶ 48, 61, 69, 112-118, 128, 139-140, 146, 147, 151, 153-158). Settlement at this time will avoid this uncertainty, and additional substantial costs, such as those that have already been incurred by both Parties, and will avoid the delay and risks presented by the further prosecution of this litigation. The instant settlement eliminates those risks.

### 5.    Extent of Discovery Completed and Stage of the Proceedings

The extent of evidentiary review completed and the stage of the proceedings bear on whether settlement should be approved. Courts look to whether investigation of the facts and evidence is sufficient to allow counsel and the court to act intelligently. *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y 1985), *aff'd* (2d Cir. 1986).

The extensive discovery and investigation clearly allowed both parties to assess their relative positions and come to the conclusion, based on the analysis of the information, that settlement at this stage of the litigation was proper and that the settlement terms and amount were fair, adequate and reasonable. (Yeremian Decl., ¶ 16; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 35-49; *see also* ECF No. 52-1, ¶¶ 30-41). Counsel also completed comprehensive informal and formal discovery and were in possession of the documents and data necessary for estimating liability exposure at the mediations. (*Id.*).

By the time the settlement was reached, the action had proceeded to the point where both Plaintiff and Defendant had "a clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec. Litig.*, 618 F. Supp. at 745. At the time the Parties mediated the action, Plaintiff had been litigating the action for many months and had conducted extensive informal investigation and retained an expert to review data and employment practices. Accordingly, the stage of the proceedings, and the amount of the discovery completed, strongly favor approval of the Settlement. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213-14 (S.D.N.Y. 1992).

## 6.     Experience and Views of Counsel

The Settlement is the product of arms-length negotiations conducted by capable counsel who are experienced in class action litigation and have invested many hours, and the assistance of an experienced wage and hour class action mediator. (Yeremian Decl., ¶¶ 48-49; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 131-152; Declaration of Alvin B. Lindsay in Support of Final Approval ("Lindsay Decl."), ¶¶ 3-5; ECF No. 60-5, Lindsay Fees Decl., ¶¶ 6-15; ECF No. 60-7, Davtyan Fees Decl., ¶¶ 3-8). Defendant is represented by very skilled and capable counsel from a top-tier law firm. (Yeremian Decl., ¶ 8).

Having conducted extensive informal investigation and discovery in this case and having assessed the risks of continued litigation, it is the view of Class Counsel that the settlement appropriately reflects the relative strengths of the parties' respective claims and defenses, as well as the substantial risk presented in continuing the litigation, while recognizing the uncertainty, risk, expense, and delay attendant to continuing the action through trial and any appeals. (Yeremian Decl., ¶¶ 25-27; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 43, 47-65, 69, 92, 105, 114, 118, 139, 144, 149, 152). Such recommendations should lend a presumption of reasonableness to the Settlement. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18 (the view of the attorneys actively conducting the litigation, while not conclusive, "is entitled to considerable weight"). Moreover, "[c]ourts have consistently refused to substitute their business

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

1    judgment for that of counsel, absent evidence of fraud or overreaching." *In re King Res. Co. Sec.*

2    *Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976).

3                 **7.    Presence of a Governmental Participant**

4        Pursuant to California <u>Labor Code</u> §§ 2698 - 2699.5, Plaintiff's counsel has notified the

5    Labor Workforce Development Agency ("LWDA") of the Settlement and Amended Settlement

6    and the PAGA claim. (Yeremian Decl., ¶ 62, and Exhibit C thereto for LWDA submission

7    confirmation). Thus, governmental agencies such as the LWDA will have the opportunity to

8    weigh in on the proposed Settlement should they believe it unfair in any respect. This confirms

9    the reasonableness of the Settlement.

10           **8.    Reaction of the Settlement Class Members to the Settlement**

11        "A favorable reception by the Class constitutes 'strong evidence' of the fairness of a

12    proposed settlement and supports judicial approval." *In re PaineWebber Ltd. Pships. Litig.*, 171

13    F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Here, there are no objectors

14    and no requests for exclusion, and 2,881 California Class Members and 3,370 FLSA Collective

15    Members will receive payments. (Mills Decl., ¶¶ 13-17). This demonstrates a "favorable reception"

16    by class members to the settlement. In fact, "the absence of objectants [sic] may itself be taken as

17    evidencing the fairness of a settlement." *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y.

18    1988); *see also In re Warner Communications Sec. Litig.*, 618 F. Supp. at 746 (noting that two

19    objections to settlement was very low); *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984)

20    (explaining that the reaction of the class was "overwhelmingly favorable" because no objections to

21    the settlement had been filed). The absence of any requests for exclusion or objectors establishes

22    the Settlement has been well-received and supports granting it final approval.

23    ///

24    ///

25    ///

26

27

28

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS**

1

### 9.    Settlement Procedure

Another factor that may be considered by the Court is "the procedure by which the settlement was arrived at." *See In re Patriot Am. Hospitality, Inc. Sec. Litig. (Open Market Action)*, 2005 U.S. Dist. LEXIS 40995, *5 (N.D. Cal. 2005) ("To these factors, the court adds (9) the procedure by which the settlements were arrived at, see Manual for Complex Litigation (Second) § 30.44 (1985) . . . ."). As noted above and described in the declarations and prior filings, the Settlement was achieved only after protracted and complex arms-length negotiations by experienced counsel, and with the assistance of an experienced mediator in two separate mediations. The time between filing the first motion for preliminary approval (ECF No. 44) and the eventual entry of the Court's order granting it (ECF No. 59) took many months and multiple hearings, renewed motions for preliminary approval, and supplemental filings. There is no doubt that the litigation process was adversarial, as evidenced for example by the contested petition for MDL coordination in early 2018, and the Settlement has been sufficiently vetted by the Court, which favors approval of the final settlement. (Yeremian Decl., ¶ 58).

### C.    Approval of Attorneys' Fees, Costs, Representative Enhancement

Plaintiff and Class Counsel have negotiated a Total Settlement Amount of **$1.3 million** for the Class and Collective Members, none of whom has paid any fees or costs and none of whom have objected to Class Counsel's requested fees and costs. Administration of the Settlement has progressed well-past the deadline to object or opt-out of the Settlement on **April 3, 2020**, and the final approval hearing is approaching on **May 29, 2020**. Plaintiff therefore requests, without opposition from Defendant, that Plaintiff's Counsel be awarded at final approval, from the preliminarily approved Total Settlement Amount of $1.3 million, attorney's fees (not to exceed one-third of the Total Settlement Amount, i.e. $433,333.33) and reasonable costs incurred of up to $15,000, as awarded by the Court (with present costs at $14,312.26). Any portion of the fees or costs that are not awarded to Counsel will be added back into the Net Settlement Amount for distribution to the Class Members. (Yeremian Decl., ¶¶ 48-59).

Class Counsel has provided detailed support for its request that the Court award attorneys' fees as requested based on Counsel's submissions in connection with this Motion and the Fees and Costs Motion. (Yeremian Decl., ¶¶ 48-59; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 131-152; ECF No. 60-5, Lindsay Fees Decl., ¶¶ 3-15; ECF No. 60-7, Davtyan Fees Decl., ¶¶ 3-12).

David Yeremian & Associates, Inc., including Messrs. Yeremian and Lindsay and the other associate attorneys who have worked on this action, and Davtyan Law Firm and Mr. Davtyan have the background, resources, and experience to zealously represent Plaintiff and the Settlement Class Members, and have done so. Class Counsel has also addressed the reasonableness of its hourly rates. (Yeremian Decl., ¶ 50; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 136-138, and Exhibit A; ECF No. 60-5, Lindsay Fees Decl., ¶ 4; ECF No. 60-7, Davtyan Fees Decl., ¶ 10).

For the Fees and Costs Motion, Class Counsel provided the Court with a summary of the hours invested in this case through **February 28, 2020**, and the Time and Task Detail listings for the attorneys working on it addressing their hours and  attorneys' fees for the lodestar cross-check. (Yeremian Decl., ¶¶ 49-53; ECF No. 60-1, Yeremian Fees Decl., Exhibit B at ECF No. 60-3; ECF No. 60-5, Lindsay Fees Decl., Exhibit A at ECF No. 60-6; ECF No. 60-7, Davtyan Fees Decl., Exhibit A at ECF No. 60-8).

As reported in connection with the filing of the Fees and Costs Motion, Class Counsel collectively incurred approximately **613.5** attorney hours through the **February 28, 2020** filing, amounting to **$418,277.50** in attorneys' fees. (Yeremian Decl., ¶ 53; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 141-143, and Exhibit B; ECF No. 60-5, Lindsay Fees Decl., ¶¶ 4-5; ECF No. 60-7, Davtyan Fees Decl., ¶¶ 9-10). Since the filing of the Fees and Costs Motion, and through the filing of the present motion, Class Counsel has invested further attorney hours in preparing this Motion and in conferring and corresponding with defense counsel and the Class and Collective members. (Yeremian Decl., ¶ 54). Class Counsel reports that it has incurred an additional **29 hours** between Messrs. Yeremian and Lindsay, which results in **642.5** total hours and **$438,577.50** in total attorneys' fees through the filing of this Motion (Yeremian Decl., ¶¶ 54-56; Lindsay Decl., ¶¶ 3-7).

1     This number exceeds the requested fees of **$433,333.33**, and further surpasses it when

2  considering all the further hours counsel will incur in taking this action through final approval

3  hearing and funding and disbursement and post-distribution accounting. (Yeremian Decl., ¶ 56).

4     Therefore, no lodestar multiplier will be required to award Class Counsel reasonable

5  attorneys' fees of **$433,333.33**, which is one-third of the **$1.3 million** Settlement fund that Class

6  Counsel and Plaintiff have created for the Class and Collective Members. The Fees and Costs

7  Motion documents further address justification for the upward departure from the federal fees

8  benchmark of 25% of the settlement fund. (Yeremian Decl., ¶¶ 49-52; ECF No. 60-1, Yeremian

9  Fees Decl., ¶¶ 131-152; ECF No. 60-5, Lindsay Fees Decl., ¶¶ 3-15; ECF No. 60-7, Davtyan Fees

10  Decl., ¶¶ 3-12). Class Counsel respectfully requests that the Court award attorneys' fees in the

11  amount of **$433,333.33**.

12     Class Counsel's declaration in support of the Fees and Costs Motion also reported that it

13  had incurred **$13,831.26** in litigation costs through **February 28, 2020**. (Yeremian Decl., ¶¶ 59-

14  60; ECF No. 60-1, Yeremian Fees Decl., ¶ 152 and Exhibit C thereto (Costs Invoice) at ECF No.

15  60-4). Since that time, and to take this action through the final approval hearing, Class Counsel

16  reports that the total litigation costs it has incurred and will incur through the final approval

17  hearing are now at **$14,312.26** (Yeremian Decl., ¶ 60, and **Exhibit B** thereto for updated Costs

18  Invoice). The Settlement as preliminarily approved allocates up to **$15,000** for litigation costs, but

19  Class Counsel has incurred less. Any portion of the requested Class Counsel Award ($433,333.33

20  in fees and up to $25,000 in costs) or the Class Representative Enhancement and Service Award to

21  Plaintiff ($10,000) that is not awarded to Class Counsel or Plaintiff will be added back into the

22  Net Settlement Fund and will be distributed to the Class and Collective Members, as provided in

23  the Settlement Agreement. (Yeremian Decl., ¶ 37; Exhibit A, Settlement, ¶ 2.6, 2.23, 4.4). Class

24  Counsel also requests that the Court award reasonable litigation costs and expenses incurred in

25  this action in the amount of **$14,312.26**.

26     Finally, Class Counsel and Plaintiff request that the Court award Plaintiff the requested

27  Class Representative Enhancement and Service Award of **$10,000**. Class Counsel has addressed

28  the contributions Plaintiff has made to this litigation and his efforts on behalf of the Class

members. (Yeremian Decl., ¶¶ 46-47; ECF No. 60-1, Yeremian Fees Decl., ¶¶ 124-130). Plaintiff also provided a Declaration in support of the Fees and Costs Motion and award of the requested $10,000 Class Representative Enhancement and Service Award, which details his invaluable contributions to this litigation and his unwavering efforts to secure this Settlement on behalf of the Class and Collective members. (*See* Sanchez Declaration in support of Fees and Costs Motion, at ECF No. 60-12, ¶¶ 3-23). Plaintiff and Class Counsel request that he be awarded the requested Class Representative Enhancement and Service Award of **$10,000**.

### D.    Final Certification for Settlement Purposes Is Appropriate

For the reasons set forth in greater detail in connection with Plaintiff's previously filed Motions for Preliminary Approval, Supplemental Briefings, and Fees and Costs Motion, Plaintiff respectfully submits that the proposed Collective and putative Class satisfy the requirements of Rule 23(b)(3) for purposes of settlement. The Court has preliminarily and conditionally certified the Settlement Class and Collective in its Preliminary Approval Order. (*See* ECF. No. 59).

The "California Class Members" are defined as "all individuals employed by Defendant at any time from **October 6, 2015** through **January 31, 2019** and who have been employed by Defendant as nonexempt hourly retail store employees within the state of California," and the "California Settlement Class Members" are all of those who do not opt out. (Yeremian Decl., ¶ 34, Exhibit A, Settlement, ¶¶ 2.1-2.3; ECF No. 60-1, Yeremian Fees Decl., ¶ 71(a)). The California Class Claims do not encompass the FLSA Collective Claims, and the FLSA Collective Claims do not encompass the California Class Claims. (*Id*. at ¶ 2.1).

The "FLSA Settlement Collective Members" are defined as "all current and former hourly, non-exempt retail store employees who worked for Defendant at any time during the period of **December 15, 2014** through **January 31, 2019** and who worked overtime and received bonuses and/or incentive pay in the same pay period." (Yeremian Decl., ¶ 34, Exhibit A, Settlement, ¶¶ 2.15-2.17; *See* ECF No. 60-1, Yeremian Fees Decl., ¶ 71(b)). The "FLSA Settlement Collective Members" are those who affirmatively opt into this Settlement by cashing the checks for their Individual Collective Action Settlement Payments, which will include language acknowledging they are opting into the FLSA Collective. (*Id*. at ¶¶ 2.16-2.17). The

1  relevant time period of **December 15, 2014** through **January 31, 2019** applies to all the FLSA

2  Collective Members, and the FLSA Collective Claims were not impacted by the *Ruch* release.

3  (*Id.* at ¶ 2.16). The FLSA Collective Claims do not encompass the California Class Claims, and

4  the California Class Claims do not encompass the FLSA Collective Claims. (*Id.* at ¶ 2.15). There

5  are 2,881 California Class Members and 3,370 FLSA Collective Members, with no exclusions or

6  objectors. (Mills Decl., ¶¶ 6-7, 13-15).

7          **E.**      <u>**Settlement Administration Costs Should Be Approved**</u>

8         The Court approved Settlement Administrator, Rust Consulting, Inc., is and has been

9  responsible for mailing the Notice packets to the Class members, processing notice packets,

10  responding to Class and Collective member inquiries, calculating the settlement payments,

11  transmitting individual settlement payments to participating Class Members, providing status

12  reports of the claims administration to all counsel on a regular basis, calculating and withholding

13  the Class Members' share of taxes, paying those withholdings to the appropriate government

14  agencies, distributing the settlement checks, and performing such other duties as the parties and

15  Court may direct. (*See* Mills Decl., ¶¶ 3-23). The preliminarily approved costs incurred by Rust

16  Consulting, Inc. are $65,000.00, and this is the amount Rust is requesting it be awarded at final

17  approval. (*Id.* at ¶ 23). Rust also addresses the Reserve Fund and *Cy Pres* Beneficiary, along with

18  the post-distribution accounting procedures required under the Northern District's Procedural

19  Guidelines. (*Id.* at ¶¶ 19-22). Plaintiff therefore requests final approval of the Settlement

20  Administration costs to Rust Consulting, Inc. in the amount of **$65,000.**

21  ///

22  ///

23  ///

24

25

26

27

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION
OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS

1    **IV.    <u>CONCLUSION</u>**

2          For the reasons set forth herein, and in the Motion for Preliminary Approval and Motion

3    for Attorneys' Fees and Costs and Class Representative Enhancement, and the documents

4    submitted in support, Plaintiff respectfully requests that this Court grant final approval to the

5    proposed Settlement and enter the proposed Judgment and Order in the form submitted herewith.

6

7    DATED:  April 24, 2020                    DAVID YEREMIAN & ASSOCIATES, INC.

8

9                                        By <u>/S/ Alvin B. Lindsay</u>
                                            David Yeremian
10                                           Alvin B. Lindsay
                                            Attorneys for Plaintiff LUCIO SANCHEZ
11                                           and the Settlement Class and Collective
                                            Members

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THIRD AMENDED JOINT STIPULATION
OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION CLAIMS